# Richmond

BRISTOL BUILDERS SUPPLY COMPANY, INC. (Employer),
AND LIBERTY MUTUAL INSURANCE COMPANY (Insurer)
v. BETTY LYONS McREYNOLDS, ET ALS.

January 14, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*Sinnott, May & Leaman, for the appellants.*

*S. Bruce Jones* and *J. D. Baumgardner*, for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

This is an appeal from and award of the Industrial Commission of Virginia, in favor of appellee and her minor children and against appellants.

The salient facts are these:

The employer, Bristol Builders Supply Company, Inc., was engaged in the milling business in Bristol, Virginia, and had in its employ as a foreman the deceased husband of the claimant. As employer and employee, they came within the provisions of the workmen's compensation law of Virginia (Acts 1918, chapter 400, as amended), requiring the employer to pay compensation to its employees for injuries or death resulting from an accident arising out of and in the course of their employment.

On May 14, 1930, while engaged in the course of his employment, Horace G. McReynolds, husband of claimant, accidentally had a splinter embedded in his right arm just above the elbow. The splinter was removed, the wound mopped out with mercurochrome, and antiseptic dressing was applied. An infection of the wound followed, which was evidenced by redness extending three inches below the elbow. The following day employee was given a 1500 unit dose of antitoxin. Though still suffering from the wound, he reported for duty over a period of several days. On

June 5, 1930, pneumonia developed, sudden in onset, accompanied by low leucocyte count, and on June 12th he departed this life.

The sole question in this case is whether or not the claimant's deceased died of septic pneumonia. If death did result from septic pneumonia, claimant is entitled to compensation; otherwise, she is not.

■ In *Gobble* v. *Clinch Valley Lbr. Co.*, 141 Va. 303, 127 S. E. 175, 176, it is said:

"The workmen's compensation act (Acts 1918, chapter 400, page 637), although in derogation of the common law, is highly remedial, and should be liberally construed in favor of the workman. It is an effort on the part of the State to insure the workman to a limited extent against loss from accidents in his employment, to give him a speedy and expeditious remedy for his injury, and to place upon industry the burden of losses incident to its conduct. The compensation is furnished in weekly installments when most needed, promptly after the injury, and the immediate need of physicians and hospital service and supplies are furnished at the expense of the employer. Acts of this character have proved so beneficial that they have been adopted in nearly every State of the union."

The error assigned is:

"The Industrial Commission erred in awarding compensation because the evidence showed that the claimant's husband died as a result of pneumonia and that the pneumonia did not result from the accident."

Appellants rely upon what they contend is the uncontradicted evidence of the two attending physicians, that the wound received by the employee did not produce the disease.

In the opinion of the Commission it is said: "The severity of the infection is not accurately shown in the record because, in the early stages following the accident, accurate

observations regarding temperature, blood count and local manifestations were not made."

The general rule is that when an attending physician is positive in his diagnosis of a disease, great weight will be given by the courts to his opinion. However, when it appears, as we think it does appear in this case, that the diagnosis is shaded by doubt, and there is medical expert opinion contrary to the opinion of the attending physician, then the trier of the fact is left free to adopt that view which is most consistent with reason and justice. So hesitant was the first attending physician to commit himself as to the nature of the disease which produced death, that during his examination the hearing Commissioner felt impelled to take charge of the examination. This is shown by the following:

By the commissioner:

"Q. There are very few things, doctor, we know, but we do have opinions, and especially a man who attended the patient, under the circumstances as developed in this case, knows the circumstances as developed in this case, knows more about it than anybody in the world and I believe it is your duty to give us your best opinion and your reasons for it, whatever it is?

"A. I don't know. I wouldn't like to commit myself.

"Q. You mean to say you have no opinion?

"A. I have some opinion but I wouldn't like to express it.

"Q. Dr. Vance, the Commission is entitled to that opinion and we will have to insist on your giving it to us.

"A. We see a case or two develop pneumonia this way and see hundreds without any accident. If I had to say yes or no I would say the accident had nothing to do with the pneumonia.

"Q. That is your best opinion?

"A. Yes, sir."

The final conclusion of the other attending physician is thus displayed by the record.

"Q. In your opinion, did the wound have any connection with the case of pneumonia that killed him?

"A. I couldn't say it did, sir.

"Q. Is it your best judgment it did not?

"A. That it did not, yes, sir; so far as I know. I can't see any connection."

In conflict with the above expressed conclusions, two additional physicians, introduced by the claimant and testifying as experts, stated that in their opinion the disease was superinduced by the wound.

The Commissioner, confronted with this situation, appointed a commission composed of three disinterested physicians and propounded to them this hypothetical question:

"Q. Assume that a man thirty-six years of age received a wound by a splinter one and one-half inches long being forced into the arm just above the elbow, and the splinter removed and the wound dressed on the same day, May 14th; that the wound was dressed again on May 15th, 16th, 17th, 19th, 21st and 24th, and three or four times between the 24th and June 5th; that after the injury and before June 5th he had a temperature about normal; and on the latter day, June 5th, he had chills and a red splotch on his forehead, and took to his bed in the late afternoon; that on June 6th, he showed definite symptons of pneumonia in the lower lobe of the right lung; that on June 8th he was taken to the hospital. At that time, June 8th, date of his entry in the hospital, the white corpuscle blood count was 5400, and his poly count was eighty-six per cent, with an abnormally low hemoglobin and a high temperature. During the period between the injury and the taking to the hospital he complained of great pain; his eyes and face were red and his temperature above normal; he also was unable to attend to his regular duties as shop foreman, although he was present on the job at times; that during the same periods there were red streaks radiating up and down the arm from

the wound for several inches and the presence of a lump indicated at the wound with a formation of a small around of pus so that the wound was lanced on or about June 1st, after which the wound appeared to heal, although the patient continued to complain of pain in the arm up to the time pneumonia set in, and two days preceding his death said that his arm was almost killing him; that from his death there were no unusual pneumonia symptoms except those indicated above. What, in your opinion, caused the pneumonia of that patient resulting in his death? Further assume he died on the 12th of June?"

In answer thereto they stated: "We feel from the question as stated that it was septic pneumonia, probably due to the injury."

█ In this state of the record, the Industrial Commission was of opinion that the preponderance of the evidence shows that claimant's deceased died of septic pneumonia caused by infection from the wound. In that conclusion we concur, and therefore the award is affirmed.

*Affirmed.*