COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick,[*] Judges Baker and Annunziata
Argued at Alexandria, Virginia


AMOCO FOAM PRODUCTS COMPANY
                                        OPINION BY
v.   Record No. 0324-97-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                     DECEMBER 30, 1997
ESSIE L. JOHNSON


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Benjamin J. Trichilo (Trichilo, Bancroft,
          McGavin, Horvath & Judkins, P.C., on briefs),
          for appellant.

          Nikolas E. Parthemos (Prosser, Parthemos &
          Bryant, P.C., on brief), for appellee.



     Amoco Foam Products Company (employer) argues on appeal that

the Workers' Compensation Commission erred as a matter of law in

awarding benefits for an injury caused by a compensable

consequence.  We disagree, and we affirm the commission.

                              I.

     On July 14, 1992, Essie L. Johnson (claimant) sustained a

compensable left ankle injury which required a lengthy course of

treatment, including surgery by Dr. John H. Zoller on June 7,

1994.  Claimant received temporary total disability benefits from

June 7 through August 25, 1994 and temporary partial disability

benefits beginning August 26 through October 19, 1994 as a result

of her ankle injury.[1]
_____

          [*]On November 19, 1997, Judge Fitzpatrick succeeded Chief
Judge Moon as chief judge.

          [1]After claimant achieved maximum medical improvement, the
parties stipulated to a 7% loss of function to the left foot.

On August 20, 1994, while recovering from the surgery, claimant's left ankle gave way and she fell, damaging her right knee. Dr. Zoller diagnosed her injury as internal derangement of the right knee, and he performed an arthroscopy on November 22, 1994. The deputy commissioner awarded claimant benefits for her knee injury, finding that "employer is responsible for this right knee injury as a compensable consequence of the original injury." The full commission affirmed the deputy's decision and found that claimant's "testimony is sufficient to establish the link between her serious ankle injury and her fall onto her knee." This finding was not challenged.

On November 12, 1995, claimant again fell and filed a claim seeking compensation for an additional injury to her right knee.

Dr. Zoller, in an April 9, 1996 letter, expressed his view:

> I tend to think that this was largely due to the injury of August 1994. She was having pain at the time of November 1995 following the injury of August 1994 and her knee "buckled" on her. I tend to think that her continued pain is what actually caused her to buckle, and that this is all causily [sic] related to the August 1994 injury.

Dr. Joseph D. Linehan examined claimant at employer's request. He opined that claimant suffered a "degenerative process in the right knee" and "the right knee problem is in no way related to the sprained left ankle and its subsequent surgery." In a May 8, 1996 letter, Dr. Linehan wrote that "the

Claimant received permanent partial disability compensation accordingly.

2

fall of November 13, 1995 is not related to the left ankle injury of July 14, 1992."

Upon review of the evidence, the deputy commissioner gave "great weight" to Dr. Zoller's opinion that the November 1995 fall "was caused by pain in the knee resulting from the August, 1994 accident which caused the claimant to feel that it buckled under her." The deputy commissioner found the November 1995 knee injury was a compensable consequence of the August 1994 knee injury and thus a compensable consequence of the original ankle injury.

The full commission affirmed, making the following specific findings and conclusions:

> The knee injury originally sustained on August 20, 1994, is treated as if it occurred in the course of and arising out of the claimant's employment. Moreover, the doctrine of compensable consequences is applicable both to an aggravation of a prior compensable injury and a new injury. Therefore, the claimant is entitled to benefits for disability related to her compensable knee injury.
>
> Dr. Zoller, the claimant's treating physician, relates the November 12, 1995, fall to the August 20, 1994, injury. We find his opinion persuasive . . . . Dr. Linehan's report, which focuses on an irrelevant issue, was properly discounted by the Deputy Commissioner.

II.

Viewed in the light most favorable to the claimant, who prevailed before the commission, see Fairfax County v. Espinola, 11 Va. App. 126, 129, 396 S.E.2d 856, 858 (1990), the record

3

reflects conflicting medical testimony from Dr. Zoller and Dr. Linehan regarding the relationship between claimant's 1995 knee injury and her ankle injury. It was Dr. Zoller's view that the November 1995 fall and knee injury were causally related to the August 1994 knee injury. Dr. Linehan opined that claimant suffered from a degenerative knee process and that the November 1995 knee injury was unrelated to the original ankle injury.

"A question raised by conflicting medical opinion is a question of fact." Department of Corrections v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986). "Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). "The fact that there is contrary evidence in the record is of no consequence." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (citation omitted). See also American Filtrona Co. v. Hanford, 16 Va. App. 159, 428 S.E.2d 511 (1993). The commission gave greater weight to the opinion of claimant's treating physician and found that her 1995 knee injury was related to her 1994 knee injury, an original compensable consequence of the ankle injury. See Fingles Co. v. Tatterson, 22 Va. App. 638, 641, 472 S.E.2d 646, 647 (1996) (citing Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986)) (the opinion of a treating physician is entitled to great weight). We therefore affirm the

4

commission's finding of a causal relationship between claimant's 1995 and 1994 knee injuries.[2]

The determination that the 1994 knee injury was a compensable consequence of claimant's ankle injury is <u>res judicata</u>. It is undisputed that claimant's original 1992 injury was not the immediate cause of her 1995 injury. Consequently, the issue before us is whether as a matter of law the commission may award benefits for an injury caused by a compensable consequence, or, in other words, whether a claimant may recover for a compensable consequence of a compensable consequence.

### III.

This issue is one of first impression in the Commonwealth, but has been addressed by a sister state. In <u>Roseburg Forest Products v. Zimbelman</u>, 900 P.2d 1089 (Or. Ct. App. 1995), the Court of Appeals of Oregon considered the claim of an employee who developed an emotional condition after suffering a compensable injury. The stress of his emotional condition led to a fatal heart attack. The court found that "a compensable consequential condition is itself a compensable injury" and that the claimant's recovery depended upon proof of causal relationships between the first and second and the second and third injuries. <u>Id.</u> at 1091. The court did not require proof

---

[2]The commission did not specify whether claimant's 1995 injury was a new injury or an aggravation of her 1994 injury because the doctrine of compensable consequences applies to both. <u>See</u> <u>Bartholow Drywall Co. v. Hill</u>, 12 Va. App. 790, 407 S.E.2d 1 (1991).

that the original work-related injury was the immediate cause of the heart attack. Id. "[I]f the emotional condition is a compensable injury because it is a compensable consequence of the [work-related injury], and if the heart attack was caused in major part by the emotional condition, then the heart attack is compensable." Id.

In Virginia, the doctrine of compensable consequences "is well established and has been in existence for many years." Williams Indus., Inc. v. Wagoner, 24 Va. App. 181, 186, 480 S.E.2d 788, 790 (1997).

> This doctrine, also known as the chain of causation rule, provides that "where the chain of causation from the original industrial injury to the condition for which compensation is sought is direct, and not interrupted by any intervening cause attributable to the employee's own intentional conduct, then the subsequent condition should be compensable."

Food Distribs. v. Estate of Ball, 24 Va. App. 692, 697, 485 S.E.2d 155, 158 (1997) (quoting Leadbetter, Inc. v. Penkalski, 21 Va. App. 427, 432, 464 S.E.2d 554, 556 (1995)) (emphasis added). [W]hen the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of direct and natural

6

<u>results</u>, and the claimant's own conduct as an independent intervening cause.

<u>Williams Indus., Inc.</u>, 24 Va. App. at 186, 480 S.E.2d at 790 (citation omitted) (emphasis added). "The simplest application of this principle is the rule that <u>all the medical consequences and sequelae</u> that flow from the primary injury are compensable." <u>American Filtrona Co. v. Hanford</u>, 16 Va. App. 159, 163, 428 S.E.2d 511, 513 (1993) (citation omitted) (emphasis added).

Employer contends that, because claimant failed to establish an immediate causal relationship between the original ankle injury and her 1995 knee injury, as a matter of law, we must reverse the commission's award. However, employer advocates a more narrow view of causation than that contemplated by the enumerated principles. The phrases "chain of causation," "direct and natural results," and "all the medical consequences and sequelae" anticipate the possibility of more than just one event; the doctrine of compensable consequences is not limited to merely one immediate consequence of an industrial injury.

Compensable consequences include injuries sustained not as an immediate result of the original injury but as a result of some intermediate event which was itself a result of the original injury. See <u>Immer & Co. v. Brosnahan</u>, 207 Va. 720, 152 S.E.2d 254 (1967) (injuries sustained in car accident while traveling to treatment for original injury are compensable); <u>Food Distribs.</u>, 24 Va. App. at 699-700, 485 S.E.2d at 159 ("suicide is

7

compensable if the [work-related] injury produces mental derangement and the mental derangement produces suicide"); Imperial Trash Serv. v. Dotson, 18 Va. App. 600, 602, 445 S.E.2d 716, 718 (1994) (death was compensable where claimant "died as a result of cardiac arrest caused by [work-related] heatstroke"); American Filtrona Co., 16 Va. App. at 164, 428 S.E.2d at 514 (employer responsible for costs of "hepatitis . . . found to have resulted from a blood transfusion or any other medical treatment necessitated by the original industrial injury"). See also Code § 65.2-605 (consequences of treatment provider malpractice are compensable as part of the original injury). We see no reason to deviate from these principles when the intermediate event is a compensable consequence.

We find additional support in cases which treat the first compensable consequence as if it were the primary injury.

> "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

Imperial Trash Serv., 18 Va. App. at 606-07, 445 S.E.2d at 720 (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 283, 348 S.E.2d 876, 879 (1986)). "In other words, where a causal connection between the initial compensable injury and the subsequent injury is established . . . the subsequent injury is treated as if it occurred in the course of and arising out of the

employee's employment." <u>Bartholow Drywall Co. v. Hill</u>, 12 Va. App. 790, 794, 407 S.E.2d 1, 3 (1991) (citations omitted). This reasoning underscores the causal connection between the primary and consequential injuries. An employer may be held responsible for a later injury resulting from a compensable consequence if the claimant establishes the requisite causal relationship between the two events.

In the instant case, the evidence established that claimant's 1995 knee injury was causally related to her 1994 knee injury which was causally related to her initial ankle injury. This chain of causation is direct and natural, and there is no evidence of any intervening cause attributable to claimant's conduct. Furthermore, claimant's 1994 compensable consequence knee injury becomes a primary injury, and the injury it caused in 1995 is clearly a compensable consequence of it. We hold that claimant's November 1995 knee injury is a compensable consequence of her 1994 knee injury and of her 1992 ankle injury. For the foregoing reasons, we affirm the commission.

<u>Affirmed.</u>