COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Coleman and Elder
Argued at Salem, Virginia


ALLEN & ROCKS, INC. AND
 NORTH RIVER INSURANCE COMPANY

                                        OPINION BY
v.    Record No. 0768-98-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                     DECEMBER 22, 1998
PERRY LEE BRIGGS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          S. Vernon Priddy, III (Collin J. Hite; Sands,
          Anderson, Marks & Miller, on brief), for
          appellants.

          Gary Lumsden (Rhonda L. Overstreet; Lumsden,
          Overstreet & Hansen, on brief), for appellee.



     Allen & Rocks, Inc. and its insurer (collectively referred

to as "employer") contend the Workers' Compensation Commission

("commission") erred (1) in finding that Perry Lee Briggs'

("claimant") injury to his left knee was a compensable

consequence of his work-related back injury; (2) in refusing to

remove Dr. Murray Joiner as claimant's treating physician; and

(3) in awarding attorney's fees.  For the following reasons, we

affirm in part and reverse in part.

                     I.  BACKGROUND

     On April 24, 1980, claimant, a porter, suffered a

compensable injury to his lower back when he slipped on stairs in

the course of his employment.  His claim was accepted by employer

and several awards for compensation benefits and lifetime medical

benefits have been entered.

The evidence established that claimant came under the care of Dr. Murray Joiner, a physiatrist, on November 9, 1994. Following an initial evaluation of claimant, Dr. Joiner noted a history of two lumbar laminectomies, a spinal fusion, and a right meniscus repair surgery. On that occasion, claimant reported "bilateral low back pain which is constant and sharp in quality," with radiation into his right lower extremity. Dr. Joiner initially diagnosed claimant's condition as "failed back syndrome," and he recommended injections and physical therapy.

Over the next year, claimant followed this treatment plan of physical therapy and injections. On February 27, 1996, claimant returned to Dr. Joiner with severe pain in his lower left leg. Dr. Joiner opined that the left knee pain was "[secondary] to chronic gait deviations," caused by claimant's failed back syndrome. Claimant was referred for additional physical therapy to treat his back and left knee pain. On at least seven occasions in 1996, Dr. Joiner assessed claimant's condition as left knee pain secondary to chronic back pain. In 1997, Dr. Sam Samarsinghe, a pain management specialist, treated claimant for "increased back discomfort with bilateral leg radiation."

When employer's insurance carrier initially denied medical coverage for claimant's knee condition, Dr. Joiner wrote the company several letters. On March 5, 1996, Dr. Joiner requested Jean Ellison, a claims examiner, to reconsider the denial of medical treatment. Dr. Joiner repeated his diagnosis that

- 2 -

claimant suffered from knee pain secondary to chronic gait deviations with failed back syndrome. He concluded, "Mr. Briggs would not suffer his current knee pathology if he did not have the gait deviations which are directly related to his failed back syndrome." A similar letter was written on January 6, 1997, requesting that the insurer approve medical expenses for a knee brace and physical therapy for claimant's back injury and bilateral knee problems. The insurer continued to deny the claim asserting that the medical care did not "appear" to relate to the original workers' compensation claim.

At employer's request, claimant underwent an independent medical evaluation by Dr. Daniel L. Hodges on November 11, 1996.[1] In his report, Dr. Hodges reviewed claimant's medical history and noted his complaints of pain radiating into both lower extremities. Dr. Hodges concluded that claimant suffered from "failed back syndrome" and a "[history] of right knee surgery with secondary mechanical pain due to his antalgic gait from his low back."

Claimant filed a claim seeking to hold employer responsible for medical treatment to his left knee as a compensable

---

[1] While there was some dispute as to whether the November 11, 1996 medical report of Dr. Hodges was made part of the record before the deputy commissioner, the full commission considered the report in rendering its opinion. As noted by the commission, Dr. Hodges' opinion was not contradictory to the opinion of Dr. Joiner and, therefore, any error in the deputy commissioner's failing to keep the record open was harmless. Furthermore, this procedural issue was not raised on appeal and is not before us.

consequence of his back injury. Thereafter, employer filed an application requesting a change in treating physicians. On March 28, 1997, claimant filed a supplemental claim requesting attorney's fees because employer denied necessary medical treatment without reasonable grounds.

The parties agreed to submit the issues for a hearing on the record. The commission found that claimant's injury to his left knee was a compensable consequence of his work-related back injury. The commission denied employer's application to remove Dr. Joiner as claimant's treating physician and awarded claimant his requested attorney's fees.

## II. COMPENSABLE CONSEQUENCES AND CUMULATIVE TRAUMA

Employer argues that the commission erred in awarding benefits to claimant because his left knee condition was a result of cumulative trauma injury not covered by the Act. According to employer, claimant's knee pain constituted a new cumulative trauma injury because it was caused by an ongoing disturbance in his gait. Employer contends that as a matter of law the doctrine of compensable consequences does not apply when there is a gradually incurred injury. This argument presents an issue of first impression for this Court.

The full commission found that claimant's knee pain was caused by his gait deviations, which was a direct result of the compensable work injury to his back. Accordingly, the commission held it was a "compensable consequence" of the original injury.

- 4 -

The doctrine of compensable consequences arose from a line of Supreme Court cases discussing chain of causation principles. In Justice v. Panther Coal Co., 173 Va. 1, 2 S.E.2d 333 (1939), the claimant fractured his pelvis in the course of his employment. While in the hospital for treatment of the compensable injury, the claimant died from acute lobar pneumonia. See id. at 3, 2 S.E.2d at 334. Reversing the commission's denial of benefits, the Court wrote:

> Decedent was hale and hearty for several years immediately preceding the accident. He was never sick during this period. After the accident, exposure and operation, he was confined to the hospital where we presume all proper precautions were taken to prevent the onslaught of pneumonia from any source. Notwithstanding these precautions, pneumonia developed in an otherwise apparently vigorous and healthy man within five days from the date of the accident and within three days from the date ether was administered, resulting in death some five days later. In the absence of positive affirmative evidence, tending to establish a break in the chain of causation, the inevitable conclusion from the evidence is that the death of the decedent resulted "naturally and unavoidably from the accident."

Id. at 7, 2 S.E.2d at 336 (emphasis added).

In Leonard v. Arnold, 218 Va. 210, 237 S.E.2d 97 (1977), the Court adopted the term "compensable consequences" and provided the following rule: "When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment, every natural consequence that flows from the injury is compensable if it is a direct and natural result of a primary

- 5 -

injury. . . . This doctrine extends the canopy of the Workmen's Compensation Act to the resulting injury. This is so because the second injury is treated as if it occurred in the course of and arising out of the employee's employment." Id. at 214, 237 S.E.2d at 99-100. See also Immer & Co. v. Brosnahan, 207 Va. 720, 727-28, 152 S.E.2d 254, 258-59 (1967) (applying chain of causation rule and awarding compensation benefits for the claimant's injuries sustained in an automobile accident while en route to a medical provider for treatment of original work-related injury).

More recently, we addressed the doctrine of compensable consequences in Amoco Foam Products Co. v. Johnson, 26 Va. App. 267, 494 S.E.2d 169 (1997).

> In Virginia, the doctrine of compensable consequences "is well established and has been in existence for many years." Williams Indus., Inc. v. Wagoner, 24 Va. App. 181, 186, 480 S.E.2d 788, 790 (1997).
>
> This doctrine, also known as the chain of causation rule, provides that "where the chain of causation from the original industrial injury to the condition for which compensation is sought is direct, and not interrupted by any intervening cause attributable to the employee's own intentional conduct, then the subsequent condition should be compensable."
>
> Food Distribs. v. Estate of Ball, 24 Va. App. 692, 697, 485 S.E.2d 155, 158 (1997) (quoting Leadbetter, Inc. v. Penkalski, 21 Va. App. 427, 432, 464 S.E.2d 554, 556 (1995)) (emphasis added).
>
> [W]hen the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play

- 6 -

> are essentially based upon the concepts of
> <u>direct and natural results</u>, and the
> claimant's own conduct as an independent
> intervening cause.
>
> <u>Williams Indus., Inc.</u>, 24 Va. App. at 186, 480 S.E.2d
> at 790 (citation omitted) (emphasis added).  "The
> simplest application of this principle is the rule that
> <u>all the medical consequences and sequelae</u> that flow
> from the primary injury are compensable."  <u>American
> Filtrona Co. v. Hanford</u>, 16 Va. App. 159, 163, 428
> S.E.2d 511, 513 (1993) (citation omitted) (emphasis
> added).

<u>Id.</u> at 273-74, 494 S.E.2d at 172-73.

While we have long accepted the doctrine of compensable consequences, employer urges us to adopt a narrow application of the rule when there exists a consequence that is not attributable to a sudden identifiable accident, but is instead gradually incurred.  Here, employer contends it is irrelevant whether claimant's knee condition was a compensable consequence of his original back injury because under our Supreme Court's decision in <u>The Stenrich Group v. Jemmott</u>, 251 Va. 186, 467 S.E.2d 795 (1996), an employee may not recover for cumulative trauma injuries, "however labeled or however defined."  <u>Id.</u> at 199, 467 S.E.2d at 802.  Employer argues that the <u>Stenrich</u> rule bars recovery because claimant's knee condition, even if a consequence of his original injury, was the result of cumulative trauma triggered by a gait problem developed over a period of time.  We disagree.

In <u>Stenrich</u>, the Court held as a matter of law that repetitive motion injuries such as "carpal tunnel syndrome" and

"tenosynovitis" are not compensable under the Act.  Id. at 189-91, 199, 467 S.E.2d at 797-98, 802.  In determining that these injuries did not constitute occupational diseases, the Court made it clear that an "injury of gradual growth, . . . caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm, is definitely excluded from compensation."  Id. at 192-93, 467 S.E.2d 798-99 (citing Aistrop v. Blue Diamond Coal Co., 181 Va. 287, 293, 24 S.E.2d 546, 548 (1943) (internal quotations omitted)).  Stenrich sets the parameters for the initial coverage determination of a primary injury.

The Court in Stenrich did not consider whether the rule applies to "chain of causation" or "compensable consequence" injuries.  The difference between a primary injury and an injury that is a compensable consequence of the primary injury is significant.  Professor Larson explains:

> A distinction must be observed between causation rules affecting the primary injury . . . and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment.  As to the primary injury, it has been shown that the "arising" test is a unique one quite unrelated to common-law principles of legal cause, and . . . the employee's own contributory negligence is ordinarily not an intervening cause preventing initial compensability.  But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based

upon the concept of "direct and natural results," and of claimant's own conduct as an independent intervening cause.

The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.

The simplest application of this principle is the rule that all medical consequences and sequelae that flow from the primary injury are compensable.

\* \* \* \* \* \* \*

The first group, about which there is no legal controversy, comprises the cases in which an initial medical condition itself progresses into complications more serious than the original injury; the added complications are of course compensable. . . . [O]nce the work-connected character of any injury, such as a back injury, has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause.

A. Larson, The Law of Workmen's Compensation § 13.11, 13.11(a) (emphasis added).

In the instant case, claimant had already proven a compensable injury by accident to his back. Therefore, any subsequent injury to his knee that is the direct and natural result of the primary back injury is also compensable under the chain of causation rule. See Food Distribs., 24 Va. App. at 697, 485 S.E.2d at 158; Leadbetter, 21 Va. App. at 432, 464 S.E.2d at 556-57; Imperial Trash Serv. v. Dotson, 18 Va. App. 600, 606-07, 445 S.E.2d 716, 720 (1994) (stating the general rule that "[w]hen

- 9 -

the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an intervening cause attributable to claimant's own intentional conduct").

The fact that the compensable consequence does not meet the requirements of a primary "injury by accident" is of no moment. The opinions of both Dr. Joiner and Dr. Hodges established that claimant suffered knee pain <u>secondary</u> to and as a consequence of his failed back syndrome. Accordingly, we hold the commission did not err in refusing to apply <u>Stenrich</u> and affirm the finding of the commission.

III.  FINDING OF CAUSATION

Employer next argues that no credible evidence supports the commission's finding that claimant's knee condition is a compensable consequence of his back injury. We disagree. "The issue in cases involving the range of compensable consequences flowing from the primary injury is essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence." <u>Williams Indus., Inc.</u>, 24 Va. App. at 188, 480 S.E.2d at 791 (citing <u>Leonard</u>, 218 Va. at 214, 237 S.E.2d at 100; <u>Bartholow Drywall Co. v. Hill</u>, 12 Va. App. 790, 794, 407 S.E.2d 1, 3 (1991)).

On appeal, we view the evidence in the light most favorable to the claimant, who prevailed before the commission. <u>See</u> <u>Amoco</u>

Foam Products, 26 Va. App. at 272, 494 S.E.2d at 172. "A question raised by conflicting medical opinion is a question of fact." WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997). "'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" Id. (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)). "'The fact that there is contrary evidence in the record is of no consequence.'" Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

In the instant case, the commission gave great weight to the opinion of claimant's treating physician and found that his left knee pain was related to his 1980 back injury. See Amoco Foam Products, 26 Va. App. at 272, 494 S.E.2d at 172 (citing Fingles Co. v. Tatterson, 22 Va. App. 638, 641, 472 S.E.2d 646, 647 (1996) (the opinion of a treating physician is entitled to great weight)). Here, Dr. Joiner opined on numerous occasions that claimant's knee problems were causally related to his back injury. On February 27, 1996, Dr. Joiner diagnosed claimant with "left knee pain [secondary] to chronic gait deviations" caused by his failed back syndrome.[2] Likewise, Dr. Samarsinghe, the pain

_____

[2]On March 5, March 18, July 2, August 21, September 10, and September 25, 1996, Dr. Joiner again assessed claimant's condition as left knee pain secondary to chronic back pain. Additionally, in his progress notes dated June 23, 1997, Dr. Joiner opined that claimant suffered from chronic bilateral knee pain secondary to failed back syndrome.

management specialist, treated claimant for "increased back discomfort with <u>bilateral leg radiation</u>."  (Emphasis added).  Claimant was ultimately referred to physical therapy for treatment of "[left] knee pain."

There was also additional evidence supporting the commission's findings in Dr. Joiner's correspondence to the insurer.  On March 5, 1996, Dr. Joiner wrote,

> Mr. Briggs presented back to my office . . . reporting that you had denied his physical therapy as ordered at his previous visit.
>
> First of all, only a small portion of his physical therapy had to actually do with his knee.  The majority of the treatment interventions were directed at his low back which I believe is indisputably compensable.
>
> As it relates to his left knee pain, as you will note in my note of 2/27/96 my impression was that his "left knee pain, secondary to chronic gait deviations with #1 (#1 was failed back syndrome) increased with extended walking on school campus."  <u>Mr. Briggs would not suffer his current knee pathology if he did not have the gait deviations which are directly related to his failed back syndrome</u>.

(Emphasis added).  In a similar letter dated January 6, 1997, Dr. Joiner also requested approval for medical expenses for claimant's "work related back and bilateral knee problems."

Finally, as noted by the full commission, employer presented no evidence contradicting Dr. Joiner's opinion that claimant's left knee condition was secondary to his back injury.  Employer contends Dr. Hodges' independent medical examination constitutes credible evidence that claimant's current knee pain is not a

compensable consequence of his back injury.  However, in his report, Dr. Hodges noted that claimant had "a pins and needles sensation radiating into both [lower extremities], as well as bilateral knee pain, right greater than left."  (Emphasis added).  Even assuming that Dr. Hodges' opinion was limited to an assessment of right knee pain, this opinion does not contradict Dr. Joiner's assessment.  When we examine the evidence in the light most favorable to claimant, the prevailing party below, we conclude that the commission's decision is supported by credible evidence.  See Jenkins v. Ford Motor Co., 27 Va. App. 281, 289, 498 S.E.2d 445, 449 (1998); New Leaf, Inc. v. Webb, 26 Va. App. 460, 467, 495 S.E.2d 510, 514 (1998).

## IV.  CHANGE IN TREATING PHYSICIAN

Employer next argues that the commission erred in refusing to order a change in claimant's treating physician.  "Medical management of the employee is not to be directed by the employer.  An employer can require an employee to select an attending physician from its panel of three, but only an attending physician or the [Workers' Compensation] Commission may require an employee to see another physician." Schwab Constr. v. McCarter, 25 Va. App. 104, 109-10, 486 S.E.2d 562, 565 (1997) (quotations omitted); see also Jensen Press v. Ale, 1 Va. App. 153, 158, 336 S.E.2d 522, 525 (1985) ("A long-held principle of the . . . Commission, founded on Code § 65.1-88 [now Code § 65.2-603], is that medical management of the claimant is to be

- 13 -

directed by the treating physician, not by an employer's representative.").

The commission may order a change in the treating physician when the physician refuses to timely provide copies of the employee's medical reports to the employer upon request. See Wiggins v. Fairfax Park Ltd. Partnership, 22 Va. App. 432, 442, 470 S.E.2d 591, 596-97 (1996). The commission has previously set forth several grounds upon which it will order a change in an employee's treating physician:

> inadequate treatment is being rendered; it appears that treatment is needed by a specialist in a particular field and is not being provided; no progress being made in improvement of the employee's health condition without any adequate explanation; conventional modalities of treatment are not being used; no plan of treatment for long-term disability cases; and failure to cooperate with discovery proceedings ordered by the Commission.

Powers v. J. B. Constr. Co., 68 O.I.C. 208, 211 (1989) (construing Code § 65.1-88 (now Code § 65.2-603)). Additionally, when an employer seeks to change claimant's treating physician because the claimant has made little progress and no treatment plan has been derived, the employer must identify the alternative care that should be substituted and must demonstrate that the suggested care would be more appropriate and productive. See Bennett v. Fairfax County Sch. Bd., 74 O.W.C. 1, 4 (1995).

The commission's construction of the Act is entitled to great weight on appeal. See Gray v. Graves Mountain Lodge, Inc.,

- 14 -

26 Va. App. 350, 353, 494 S.E.2d 866, 868 (1998).  In light of these well-settled principles, employer's application for a change in claimant's treating physician is without merit.  None of the enumerated reasons for ordering a change in treating physician are found in this record.  Moreover, the commission specifically found that "employer's request is primarily because of Dr. Joiner's `personal intervention as an advocate for the claimant.'"  In its application seeking to remove Dr. Joiner as treating physician, employer alleged that

> Dr. Joiner has departed from objective treatment of the claimant and has become biased and irrationally tainted, as shown by his letter to the carrier dated January 6, 1997. . . .  Further, the absence of improvement in the claimant's condition is without explanation, and Dr. Joiner's treatment is inadequate and without a distinguishable treatment plan.

Employer offered no valid reason to question Dr. Joiner's treatment of claimant; rather, it simply suggested Dr. Hodges as a "viable alternative."  In seeking a change in the claimant's treating physician, the employer must identify alternative care that would be more productive and Dr. Hodges' opinion that claimant had reached "[maximum medical improvement] with future treatments such as [physical therapy]" is not sufficient.  Like the commission, "[w]e are unwilling to order a change in treating physicians simply because the employer objects to the tone of Dr. Joiner's letter to the claims examiner."  The commission did not abuse its discretion in refusing to order a change in treating

- 15 -

physicians.

## V.  AWARD OF ATTORNEY'S FEES

The commission awarded $350 in attorney's fees against employer for unreasonably defending the claim.  The commission has the authority to award attorney's fees against the employer if it determines that the employer defended the claim "without reasonable grounds."  Code § 65.2-713(A).  "If an employer refuses to pay a claim, reasonably believing that it is not compensable, and in the course of its investigation the grounds for refusal are not so contradicted as to be shown unfounded, then the subsequent defense is reasonable, even if it is later proven misplaced or in error."  Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 201, 336 S.E.2d 903, 907 (1985) (citing Norfolk Dep't of Fire v. Lassiter, 228 Va. 603, 605, 324 S.E.2d 656, 657-58 (1985)).

In this case, employer had reasonable grounds to believe it had no responsibility to pay for claimant's medical treatment because we have never addressed the issue of whether a cumulative trauma injury incurred after the primary injury falls within the doctrine of compensable consequences.  "Although we have rejected employer's argument, the merits of that argument are an appropriate consideration in our review of the attorney's fees." Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 716, 427 S.E.2d 215, 219 (1993).  Accordingly, we hold that the award of attorney's fees was an abuse of discretion.

For the foregoing reasons, we affirm the decision of the commission on the merits but reverse its decision as to the award of attorney's fees.

<u>Affirmed in part and reversed in part.</u>