COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judges Bumgardner and Frank
Argued by teleconference


ALL STATES STEEL ERECTORS CORP. AND
 TRAVELERS CASUALTY AND SURETY CO.

                                                MEMORANDUM OPINION* BY
v.        Record No. 0761-04-3          CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                   DECEMBER 28, 2004
TERRY L. STEELE


                 FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            E. Albion Armfield (Frith Anderson & Peake, P.C., on briefs), for
            appellants.

            Burton L. Albert for appellee.


        All States Steel Erectors Corp. (employer) contends the Workers' Compensation

Commission (commission) erred in awarding permanent total benefits to Terry L. Steele

(claimant).  The sole issue on appeal is whether credible evidence supports the commission's

finding that claimant is entitled to permanent total benefits.  We affirm the commission.

I.  BACKGROUND

        "On appeal, we view the evidence in the light most favorable to the claimant, who

prevailed before the commission."  Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508

S.E.2d 335, 340 (1998) (citations omitted).  The compensability of claimant's accident and his

ongoing medical benefits are not at issue in this appeal.  On July 27, 1991, claimant sustained a

compensable neck injury.  He was paid 500 weeks of temporary total benefits.  Those payments

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

ended February 28, 2002.  On August 20, 2003, pursuant to Code § 65.2-503, claimant filed a claim for permanent total benefits based on the loss of use of both of his arms.

Medical reports contained in the record are voluminous.  Claimant has undergone several unsuccessful surgeries and is currently using a permanent spinal morphine pump as well as Methadone, Diazepam, Bextra, Lexapro, Quinine, Colaxin, Prevacid and Elavil to control his pain.  During his deposition, claimant testified he had constant pain in his neck, shoulders and back and numbness in his arms, hands, across his shoulders and left leg.  He said the pain got worse if he tried to do anything.  He stated he sometimes needed help to dress himself.  Claimant said he could lift a two-liter bottle of coke, but he couldn't "reach away from [his] body.  [He had] to get, you know, close to it to pick it up."  When he was asked about lifting a ten pound weight during the Functional Capacities Evaluation (FCE), claimant said, "I was in a standing position and I had to squat.  I couldn't bend over.  And I picked it up that way."  He went on to say he could not lift it above his waist.  He was asked what he did during the day, and he responded, "I try to walk as much as I can.  I try to clean in the kitchen a little bit.  I will try to cook occasionally but that is not very often."  He clarified his statement and added that he walked "maybe a hundred yards, a hundred and fifty" in a day.

In Dr. David W. Tesar's March 18, 2003 deposition, he described the results of an EMG test he gave claimant.

> [The test] revealed a wide-spread damage to basically all the nerves that could be tested localizing to the area where the nerves exit the spinal cord, what we call the roots, the nerve roots, leading to the diagnosis of, which is, again, just a syndrome, really which is called polyradiculopathy, which just means number of multiple nerve roots injured in the cervical spine.

In Dr. David E. Fairleigh's deposition on the same day, he read the findings of the December 26, 2000 FCE into his deposition and when asked if he interpreted those findings, Dr. Fairleigh stated:

I concurred with much of what was said. I think that, because I know [claimant], I could interject a little bit more into that.

Number one is, [claimant] is very hard-headed, and I know that he's going to give his best effort, and this was demonstrated through the validity testing.

I think that it is also important to see that [claimant] had a very difficult time walking, so I know that he's going to go in there and lift as much as he can, and that's only going to happen once or twice. They don't test him lifting in an eight-hour day, but they had him test occasionally.

And then, on top of that, it showed that he indicated an increase in heart rate, and I think that [claimant], because of his pain, is certainly deconditioned, but I would say that, more than likely, the increase in heart rate was due to intensification of his pain in conjunction with the deconditioning. So I think as [claimant] walks, he becomes - - he hurts, and because he hurts, his heart rate goes up.

So interpreting that, you know, potentially on paper, he looked like he had potentially a sedentary level of work. They said a four to six hour workplace tolerance. Realistically, in the real world, I don't think that even a sedentary work job day in, day out, even for four hours, is something that is realistic in his case.

When asked what claimant's current diagnosis was, Dr. Fairleigh said that his condition interfered with his ability to work, the use of his upper extremities and lower extremities and that his disability was 100%. Dr. Fairleigh went on to state that despite claimant's multiple treatments after the impairment rating of April 24, 2001 that "[r]ealistically, from a pain management standpoint, he was at [maximum medical improvement (MMI)]," and when asked if he had an opinion as to whether or not claimant was currently at MMI, he stated, "he is at maximum medical improvement."

At Dr. Robert L. Ignasiak's deposition on March 19, 2003, he stated he had seen claimant as recently as the morning of the deposition. In response to claimant's counsel's question about claimant's ability to work, he stated, "I don't think he is ever going to work again. I don't think

he can. It's that simple. He can't do it." Counsel then asked if claimant had reached MMI and Dr. Ignasiak replied:

> Prior to his morphine pump he had reached it several years ago. With regards to being able to walk and sit with his lower extremities with this morphine pump, he might get a little improvement. But if it's anything that he has done before, it may not last for very long. I'm hoping for his sake it does last. But I don't think he is going to be able to have any gainful employment with the amount of relief that he is getting from this. He's still in pain. He's not still not able to sit for a long time or stand for a long time.

When asked if his conclusions were based on claimant's subjective reports of his pain or objective findings, Dr. Ignasiak stated he found objective evidence of tenderness, muscle spasm, weakness and atrophy.

Claimant had a FCE on December 26, 2000, and the tester determined he was able to work at a sedentary occupation for approximately 4-6 hours per day. On April 24, 2001, Dr. Fairleigh gave him a permanent partial disability rating of 24% to the upper extremity, 28% cervical, totaling 35% to the whole person. On June 20, 2001, Dr. Richard A. Sheldon, an Expert Medical Advisor to the Division of Workers' Compensation State of Florida, a chiropractor, gave him a 14% cervical, 5% lower back, 35% upper extremities, 12% lower extremities totaling 53% to the whole person. On March 25, 2003, Dr. Fairleigh restated his ratings, giving claimant a 75% disability rating to his left upper extremity and 70% to his right upper extremity. On May 8, 2003 claimant underwent a Physical Work Performance Evaluation and the tester, James B. Cox, a physical therapist, stated he could work at a sedentary occupation for 8 hours per day. On May 14, 2003, the insurance carrier's medical evaluation from Dr. Michael X. Rohan determined claimant had "significant subjective pain complaints however they are not verified on an objective basis." Dr. Rohan stated claimant was cleared for full time sedentary work. Claimant went to another FCE on August 12, 2003. It was determined that

claimant was not falsifying his behavior and that he was "currently unable to maintain substantial gainful employment."

The deputy commissioner found that:

> It is well settled that in determining the extent of the loss of use of two members, the inability of the injured employee to engage in gainful employment is a proper element to consider. Here, Drs. Ignasiak and Fairleigh have indicated in no uncertain terms that they believe the claimant to be disabled, an assessment which has also been advanced by Olivia Wilkes. As Ms. Wilkes pointed out in her report, the Social Security Administration determined as early at 1994 that the claimant's residual functional capacity had been reduced to a point where no work existed which he could perform on a regular or sustained basis at acceptable levels of performance. While we understand that a determination of that nature by another body is not necessarily controlling, we nevertheless find it compelling, particularly since it is a view shared by claimant's treating physicians.

Employer appealed. The commission agreed with the deputy commissioner's findings and affirmed his decision. In its decision, the commission stated:

> The employer argues that the increased ratings issued by Dr. Fairleigh in August 2003 are not adequately explained and that Dr. Rohan's ratings are more persuasive. However, Dr. Fairleigh indicated in his March 2003 deposition that the claimant's condition continued to deteriorate, after he was assessed at maximum medical improvement from a pain management standpoint. Dr. Fairleigh clearly believes that the claimant's upper extremities have been significantly impacted by the cervical injury, whereas Dr. Rohan apparently believes there is no loss of function of the upper extremities. Dr. Fairleigh is extensively familiar with the claimant's condition and we are persuaded by his opinion as opposed to the opinion of Dr. Rohan, a one-time evaluator.
>
> Dr. Fairleigh's opinion regarding upper extremity involvement is supported by the findings of Dr. Tesar and Dr. Ignasiak. His opinion that the claimant has suffered a ratable loss of the upper extremities is also supported by Dr. Sheldon's report, although we do not afford substantial weight to the chiropractor's opinion on this issue. We afford the greatest weight to Dr. Fairleigh's ratings. Accordingly, we find that the claimant's permanent functional loss has been quantified as required to qualify for permanent and total benefits.

- 5 -

Moreover, in addition to evidence of a rated loss, we consider the evidence of the claimant's incapacity for employment in determining whether the claimant is permanently unemployable. The evidence amply supports a finding that the claimant is permanently unemployable. We find the testimony of Dr. Fairleigh and Dr. Ignasiak persuasive on this issue. Their opinions are supported by the vocational evaluation of Ms. Wilkes and Dr. Sheldon's report.

We are aware that Dr. Rohan concurred with Mr. Cox that the claimant is able to perform sedentary work for eight hours per day. However, Dr. Fairleigh pointed out the limitations of the 2003 Work Performance Evaluation which render it, in his opinion, invalid. We also find that given the extensive treatment rendered to the claimant by Dr. Fairleigh and Dr. Ignasiak, they are in the best position to render opinions on the claimant's employability, as opposed to the brief snapshot of the claimant's condition captured by Mr. Cox and [Dr.] Rohan.

Employer appealed that decision.

## II. ANALYSIS

Employer contends that no credible evidence supports the commission's finding that claimant has the required quantifiable functional loss of use to his upper extremities and, therefore, he is not entitled to permanent and total disability benefits. We disagree.

"'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997) (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)). "'The fact that there is contrary evidence in the record is of no consequence.'" Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 214 (1991). "The general rule is that when an attending physician is positive in his diagnosis of a[n injury], great weight will be given by the courts to his opinion." Pilot

Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986) (citing

McPeek v. P.W.&W. Coal Co., Inc., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969); Baltimore v.

Benedict Coal Corp., 182 Va. 446, 453, 29 S.E.2d 234, 237-38 (1944); Bristol Builders' Supply

Co. v. McReynolds, 157 Va. 468, 471, 162 S.E. 8, 9 (1932)).  See also Ogden Aviation Services

v. Saghy, 32 Va. App. 89, 101, 526 S.E.2d 756, 761-62 (2000); Allen & Rocks, Inc., 28 Va. App.

at 673, 508 S.E.2d at 340; Fingles v. Tatterson, 22 Va. App. 638, 641, 472 S.E.2d 646, 647

(1996).

Code § 65.2-503(C)(1) provides:  "Compensation shall be awarded pursuant to

§ 65.2-500 for permanent and total incapacity when there is:  (1) Loss of both hands, both arms,

both feet, both legs, both eyes, or any two thereof in the same accident."  Code § 65.2-503(D)

provides:  "In construing this section, the permanent loss of the use of a member shall be

equivalent to the loss of such member, and for the permanent partial loss or loss of use of a

member, compensation may be proportionately awarded."

> Where . . . an employee suffers the loss of use of a
> scheduled body member, the compensation provided by
> [§ 65.2-503] is not awardable until the injury has reached a state of
> permanency, i.e. maximum improvement, when the degree of loss
> may be medically ascertained.  In other words, before [§ 65.2-503]
> benefits are awardable, it must appear both that the partial
> incapacity is permanent and that the injury has reached maximum
> medical improvement.

County of Spotsylvania v. Hart, 218 Va. 565, 568, 283 S.E.2d 813, 815 (1977) (internal citations

and quotations omitted).

"[I]n order to obtain benefits under Code § 65.2-503 for the loss of use of a particular

body member, the claimant must establish that he has achieved maximum medical improvement

and that his functional loss of capacity be quantified or rated."  Cafaro Construction Co. v.

Strother, 15 Va. App. 656, 661, 426 S.E.2d 489, 492 (1993) (internal citations and quotations

omitted).

"[I]n determining the extent of the loss of use of a member the capacity or incapacity of claimant to engage in gainful employment is a proper element for consideration." Virginia Oak Flooring Co. v. Chrisley, 195 Va. 850, 859-60, 80 S.E.2d 537, 542 (1954). See also Georgia-Pacific Corp. v. Dancy, 255 Va. 248, 251-52, 497 S.E.2d 133, 134-35 (1998); Sky Chefs, Inc. v. Rogers, 222 Va. 800, 805, 284 S.E.2d 605, 607 (1981); Borden, Inc. v. Norman, 218 Va. 581, 585, 239 S.E.2d 89, 92-93 (1977); Gunst Corp. v. Childress, 29 Va. App. 701, 708-09, 514 S.E.2d 383, 386-87 (1999).

In the instant case, credible evidence supports the commission's award of permanent and total disability benefits. Dr. Fairleigh and Dr. Ignasiak, among others, rated claimant's loss of use of his upper extremities and gave explanations for the results of other medical evaluations. They treated claimant more consistently and regularly than any other physicians throughout the history of claimant's condition. Their opinions were supported by other objective medical evidence. The commission properly weighed the evidence of claimant's condition as well as his employability and determined he met the requirements of Code § 65.2-503(C)(1). The most recent FCE supported claimant's inability to maintain employment, and the deposition testimony of the test provider supported the conclusions of the report.

For the foregoing reasons, we affirm the decision of the commission.

Affirmed.