COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Clements and Senior Judge Coleman
Argued at Alexandria, Virginia


ARGENBRIGHT SECURITY, INC. AND
 ZURICH AMERICAN INSURANCE COMPANY
                                                    MEMORANDUM OPINION* BY
v.       Record No. 1532-04-4           CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                           MARCH 8, 2005
STANLEY K. JACKSON, SR.


               FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               William F. Karn (Butler, Williams & Skilling, P.C., on brief), for
               appellants.

               (Christopher Paul Schewe; The Law Office of Christopher P.
               Schewe, on brief), for appellee.  Appellee submitting on brief.


        Argenbright Security Inc. and its insurer (employer) contend the Workers' Compensation

Commission (commission) erred in denying employer's application seeking termination and/or

suspension of Stanley K. Jackson, Sr.'s (employee) outstanding award of benefits.  For the

reasons that follow, we affirm the commission.

                                        I.  BACKGROUND

        "On appeal, we view the evidence in the light most favorable to the claimant, who

prevailed before the commission."  Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508

S.E.2d 335, 340 (1998) (citations omitted).  On May 7, 2001, claimant sustained a compensable

right foot and ankle injury when a golf cart he used on his security patrol rolled over his foot.

On May 14, 2001, he sought treatment with Dr. Louis Levitt, an orthopedic surgeon.  Dr. Levitt

diagnosed a contusion of claimant's foot with resulting neurapraxia to the superficial nerve.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Claimant saw Dr. Levitt one additional time on May 24, 2001. He described mild swelling and tenderness in the foot. Claimant then sought treatment with Dr. Steven Green, a chiropractor, on May 25, 2001. Dr. Green stated claimant was using a cane, had moderate swelling, "exquisite" tenderness and was unable to "heel and toe walk." He diagnosed claimant with a "sprain/strain injury resulting in a contusion injury/insult to superficial nerves of the foot – peroneal and sural" as well as the beginnings of reflex sympathetic dystrophy (RSD). On June 1, 2001, claimant sought treatment with Dr. Hampton Jackson. Dr. Jackson diagnosed a crush injury with possible RSD and referred claimant for an EMG and physical therapy. He also referred claimant to Dr. Daniel Ignacio for further treatment. Dr. Jackson's initial diagnosis was contusion, and his final diagnosis was ankle strain, RSD and right tibial neuritis. An EMG done in June 2001 was normal. Claimant received physical therapy from June 5, 2001 through March 6, 2002, when he was released to a home exercise program.

In June 2001, Dr. Ignacio began treating claimant and he remained his primary treating physician. He diagnosed a crush injury, right tibial neuritis, right tarsal tunnel syndrome and RSD. Each office note states claimant came to the appointment limping and using a cane. Dr. Ignacio treated claimant conservatively, and claimant showed no improvement.

On April 4, 2003, the employer sent claimant for an Independent Medical Evaluation (IME) with Dr. Howard G. Stern. Dr. Stern submitted a fourteen-page report. It included his objective physical findings after an examination of claimant, his analysis of the medical reports of the other physicians and his subjective conclusions. Claimant arrived at the appointment limping and using his cane. Claimant performed all physical tests, including hopping on each foot, straight gait, "heel and toe walk" and balance without his cane, with normal results. Dr. Stern also found the measurements of claimant's feet to be equal, with no tenderness, no warmth and no instability. X-rays and a bone density test were normal, thus ruling out RSD.

Dr. Stern found claimant to have a resolved soft tissue injury to his right foot and right ankle. He stated claimant was fully recovered from those injuries and that no further treatment was necessary. He also said "the claimant's subjective complaints are out of proportion to objective findings in this case."

On September 18, December 8, and December 10, 2003 the employer obtained surveillance videos of claimant that showed him walking up and down the outside steps of a townhouse, to and from a school bus stop on an incline and on flat pavement without limping or using his cane. Dr. Stern viewed those videos and submitted an addendum on December 18, 2003 in which he stated claimant appeared to be ambulating normally with no indication of pain or discomfort thus confirming the conclusions of his earlier report.

A few hours after the September 18, 2003 surveillance video was taken, claimant saw Dr. Ignacio. Dr. Ignacio's office notes from that day state claimant arrived limping, using his cane and "experiencing chronic pain and swelling" that was "[worse] with increased activities such as [walking] and standing." He detailed claimant's complaints of chronic pain and swelling, numbness, tingling and weakness. He noted mild swelling in the right foot and ankle with moderate and limited motion as well as tenderness along the collateral and tarsal ligaments and the tibial nerves. He found claimant's foot to be cold and hyposethetic. He gave claimant Ultracet and Inderal prescriptions, referred him for a bone scan and a neurological evaluation of the chronic tibial neuritis. He continued him on his light duty work restrictions "to avoid prolonged standing and walking no more than one (1) hour to eight (8) hours."

When claimant was questioned at the hearing about the difference in his condition between the time of the surveillance video and his appointment with Dr. Ignacio, he stated he was having a "good day" and that he had soaked his foot the night before. He also stated he did not remember Dr. Stern asking him to perform any physical activity except kneeling.

The deputy commissioner found Dr. Stern's report to be persuasive and terminated claimant's ongoing benefits. Specifically, the deputy commissioner stated:

> We observed the claimant at the hearing, and we were not persuaded by his testimony that he periodically experiences "good days and bad days," and that on September 18, 2003, he was having a "good day," and therefore did not need to use his cane. We instead conclude that the claimant apparently exaggerated his condition and continuing symptoms, and that Dr. Ignacio's opinions regarding the claimant's continuing disability are therefore based upon an inaccurate or incomplete history. Although we recognize and respect Dr. Ignacio's status as the claimant's primary treating physician, we will instead rely upon Dr. Stern's conclusions regarding the claimant's work status. We will also defer to Dr. Stern's education and training as an orthopedic surgeon, and we give little weight to Dr. Green's comments regarding Dr. Stern's initial IME report.

The full commission reversed the deputy and held that:

> On July 9, 2003, Dr. Ignacio released the claimant to light duty work. He elaborated on that restriction on September 18, 2003, when he instructed the claimant to "avoid prolonged standing and walking no more than one (1) hour to eight (8) hours." Although Dr. Ignacio was not privy to the surveillance videotape, we note that the tape does not show the claimant exceeding his restrictions. The videotape evinced that the claimant is capable of short periods of standing and walking consistent with his restrictions. We find that the surveillance video does not establish that the claimant failed to accurately and completely report his condition to Dr. Ignacio.

The commission also noted that "[Dr. Green's] opinion on the claimant's right foot and right ankle condition exceeds the statutory definition of chiropractic practice. We afford no weight to Dr. Green's opinion."

Employer appealed that decision.

## II. ANALYSIS

Employer contends that the commission erred in disregarding the deputy commissioner's "credibility finding" without sufficient explanation in finding employer failed to meet its burden of proof to terminate benefits. We disagree.[1]

"In an application for review of an award on the ground of a change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence." Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438, 339 S.E.2d 570, 572 (1986). See also Westmoreland Coal Co. v. Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999); Rossello v. K-Mart Corp., 15 Va. App. 333, 335, 423 S.E.2d 214, 216 (1992); Great Atlantic & Pacific Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987).

"'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'" WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997) (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)). "'The fact that there is contrary evidence in the record is of no consequence.'" Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 214 (1991). "The general rule is that when an attending physician is positive in his diagnosis of a[n injury], great weight will be given by the courts to his opinion." Pilot

---

[1] We note employer also contends the commission erred in awarding interest on the award and in overruling employer's objection to the admission of Dr. Green's report. Employer failed to raise the issue of interest before the commission or file a request for rehearing or reconsideration; therefore, it cannot be raised in this appeal. See Rule 5A:18. The issue of Dr. Green's report is moot. The commission stated that it did not consider the report in rendering its opinion.

Freight Carriers, 1 Va. App. at 439, 339 S.E.2d at 572 (citing McPeek v. P.W.&W. Coal Co., Inc., 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969); Baltimore v. Benedict Coal Corp., 182 Va. 446, 453, 29 S.E.2d 234, 237-38 (1944); Bristol Builders' Supply Co. v. McReynolds, 157 Va. 468, 471, 162 S.E. 8, 9 (1932)). See also Ogden Aviation Services v. Saghy, 32 Va. App. 89, 101, 526 S.E.2d 756, 761-62 (2000); Allen & Rocks, Inc., 28 Va. App. at 673, 508 S.E.2d at 340; Fingles v. Tatterson, 22 Va. App. 638, 641, 472 S.E.2d 646, 647 (1996). "[A] specific, recorded observation of a key witness' demeanor or appearance in relation to credibility is an aspect of the hearing that the commission may not arbitrarily disregard. When the commission does not follow such a finding, the record should indicate that the commission did not arbitrarily ignore the finding." Goodyear Tire and Rubber Co. v. Pierce, 5 Va. App. 374, 382, 363 S.E.2d 433, 437 (1987). However,

> [w]hen the deputy commissioner's finding of credibility is based, in whole or in part, upon the claimant's appearance and demeanor at the hearing, the commission may have difficulty reversing that finding without recalling the witness. On the other hand, if the deputy commissioner's determination of credibility is based on the substance of the testimony and not upon the witness' demeanor and appearance, such a finding is as determinable by the full commission as by the deputy.

Id. at 383, 363 S.E.2d at 438.

In the instant case, the deputy commissioner made no specific credibility determination based on the appearance and demeanor of the claimant. Rather, he stated that he was "unpersuaded" by claimant's testimony and concluded that claimant failed to accurately report his condition to his treating physician. This is not the "specific recorded observation" anticipated by Goodyear that would require an explanation by the commission to reach a contrary conclusion. Thus, the commission did not have to specifically address the deputy commissioner's comments regarding claimant's testimony. Additionally, we note that the commission based its opinion on two factors unrelated to this issue. It accorded greater weight

- 6 -

to the opinion of the treating physician, Dr. Ignacio, rather than Dr. Stern, who saw the claimant one time for an IME.  See Pilot Freight Carriers, Inc., 1 Va. App. at 439, 339 S.E.2d at 572. Lastly, it found the surveillance video, while showing claimant walking well, did not show him exceeding the restrictions propounded by Dr. Ignacio, his treating physician.  Thus, credible evidence supports the commission's opinion.

For the foregoing reasons, we affirm the decision of the commission.

Affirmed.