COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


OGDEN AVIATION SERVICES AND
 INSURANCE COMPANY OF THE
 STATE OF PENNSYLVANIA
                                    OPINION BY
v.   Record No. 1179-99-4   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                    APRIL 4, 2000
JOSEPH SAGHY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          William H. Schladt (Ward & Klein, on brief),
          for appellants.

          Craig A. Brown (Rebekah R. Arch; Ashcraft &
          Gerel, on brief), for appellee.


     Ogden Aviation Services and its insurer (collectively

referred to as "employer") contend the Workers' Compensation

Commission ("commission") erred in awarding disability

compensation benefits to Joseph Saghy ("claimant").  On appeal,

employer argues that:  (1) the commission applied an improper

standard in determining whether claimant's carpal tunnel

syndrome constituted an injury by accident; and (2) the evidence

was insufficient to show a causal relationship between the

injury and claimant's carpal tunnel syndrome.[1]  For the following

reasons, we affirm.

_____

     [1] Employer also contends the evidence does not support the
alternative conclusion that claimant's carpal tunnel syndrome was

I.

On February 4, 1998, claimant, an airplane fueler, was connecting a fuel hose to an aircraft in extremely cold weather. He was wearing protective gloves. As claimant "started to elevate the nozzle and hose to the adapter on the aircraft," he felt the sudden onset of pain extending from the tip of the fingers of his right hand down his right shoulder. He lost strength in his right hand and had to use his left hand to support his right hand and arm. He completed the fueling assignment and removed his glove. He noticed a puncture wound on the dorsum of his right hand. Claimant continued his refueling duties, although he experienced pain and numbness in his right hand and arm.

When he could no longer work, he reported the incident to his supervisor and sought treatment in the emergency room of Columbia Pentagon City Hospital. Dr. James Eschew diagnosed an "acute contusion with flap laceration – deep bruise with cut." Claimant was released to return to work the following day with instructions to keep his right hand clean and dry for four days.

Claimant returned to work and performed his regular duties. On February 19, 1998, he again sought emergency room treatment, reporting a history of right hand numbness of two weeks

---

a compensable consequence of the puncture wound to his hand on February 4, 1998. Claimant did not allege a compensable consequence injury, and the commission found that "the puncture wound did not cause claimant's carpal tunnel syndrome."

-

duration.  The emergency room record referred to the February 4, 1998 injury.  Claimant was diagnosed as suffering from dysesthesia in the fingers of his right hand.  The disability form completed by the emergency room physician contained a diagnosis of "probable carpal tunnel syndrome."  Claimant was given lifting restrictions but did not return to work because the employer did not have light duty work available.  Claimant testified that he never experienced the right arm symptoms prior to the February 4, 1998 incident.

Claimant was eventually referred to Dr. Edward Alexander, an orthopedic surgeon, to address his continuing complaints of right hand numbness.  In an office note dated March 16, 1998, Dr. Alexander reported that x-rays of the wrist and thumb showed no arthritis.  At that time, Dr. Alexander believed claimant suffered from "synovitis in the thumb carpometacarpal joint which should settle down."  On April 23, 1998, Dr. Alexander reported that claimant's "right hand remains numb in the pattern of the median nerve distribution."  On May 14, 1998, Dr. Alexander noted that since the February 4, 1998 injury, claimant suffered from "numbness" in the median nerve.  Because claimant also reported pain in his left shoulder from a prior injury, Dr. Alexander clarified that he was only treating claimant for "the injury of 02/04/98, when he was fueling a plane and had his arm

-

give way because of pain, sustaining a laceration to the dorsum of the hand."[2]

Claimant underwent an MRI examination of his right hand and wrist, which showed "definite mild to moderate carpal tunnel syndrome." Dr. Alexander opined that claimant's right carpal tunnel syndrome was directly related to the February 4, 1998 incident and injury. Dr. Alexander recommended that claimant undergo surgical correction.

On May 16, 1998, claimant was evaluated by Dr. Leo Goldhammer, a neurologist. Dr. Goldhammer diagnosed a "[t]raumatic injury of the distal nerves to the digits and dorsum of the hand" and "[r]ight sided carpal tunnel syndrome, mild to moderate form." Dr. Goldhammer offered no conclusive opinion as to the cause of claimant's right carpal tunnel syndrome.

At employer's request, claimant was examined by Dr. Kevin Hanley, an orthopedist, on September 1, 1998. Dr. Hanley diagnosed bilateral carpal tunnel syndrome, right greater than left. Based on the history given to him by claimant, Dr. Hanley

---

[2] The record establishes that claimant's original claim included an injury to his left shoulder and to his right hand and arm as a result of the February 4, 1998 incident. However, the deputy commissioner found that claimant failed to prove causation of the left shoulder injury, and the full commission affirmed. Accordingly, the only issue before us is the claim for right carpal tunnel syndrome.

concluded that the puncture wound sustained on February 4, 1998 did not cause the carpal tunnel syndrome.

Dr. Paul A. Devore, claimant's family physician, examined claimant on September 15, 1998. Dr. Devore opined that claimant's carpal tunnel syndrome was causally related to his work injury. "The puncture wou[n]d of the right hand is a distraction from the fact that he did indeed develop a carpal tunnel type neuropathy of that hand/wrist area as a result of the incident of 2/4/98." Dr. Devore also concluded the neuropathy that resulted in claimant's right hand "was due to <u>abnormal physical stress placed on the hand as he was trying to lift that refueling hose with this exceedingly painfully punctured right hand</u>." (Emphasis added).

Claimant proceeded on the basis of an "injury by accident" under Code § 65.2-101. In its opinion, the commission held that the "burden is on [claimant] to show that he suffered <u>an injury by accident</u> arising out of and in the course of the employment." (Emphasis added). The commission found that claimant suffered an "identifiable incident" within the meaning of Code § 65.2-101, stating the following: "[T]he 'identifiable incident' in this case commenced when the claimant felt a sudden onset of pain in the right arm while lifting the fuel hose and adapter above shoulder level."

Concluding that claimant's carpal tunnel injury was causally related to the February 4, 1998 incident, the

-

commission found "the opinion of Dr. Alexander, the treating physician, to be more persuasive." The commission made it clear "the puncture wound did not cause claimant's carpal tunnel syndrome, . . . the puncture wound is separate from the carpal tunnel syndrome" and "the weight of the evidence establishes that the claimant experienced right arm and hand symptoms immediately after the precipitating event." Accordingly, the commission awarded disability compensation benefits for claimant's "injury by accident."

## II.  INJURY BY ACCIDENT

This case represents the next step in a long line of cases addressing the compensability of carpal tunnel syndrome. Proceeding on a theory of "injury by accident" under Code § 65.2-101, claimant alleged that his right carpal tunnel syndrome was a compensable work-related injury. The commission agreed and found that claimant proved an "identifiable incident" on February 4, 1998, and a causal connection between that incident and claimant's condition. In so doing, the commission held that carpal tunnel syndrome may be a compensable "injury by accident" under Code § 65.2-101 or a compensable "ordinary disease of life" under Code § 65.2-401, depending upon the cause and how the condition develops. Whether carpal tunnel syndrome may be incurred as a result of an injury by accident under Code § 65.2-101, or whether a carpal tunnel syndrome must always be

-

considered an occupational disease, is an issue of first impression.

Under the Workers' Compensation Act (the "Act"), Code §§ 65.2-100 to -1310, "a claimant must prove by a preponderance of the evidence either an 'injury by accident' or an 'occupational disease.'" A New Leaf, Inc. v. Webb, 257 Va. 190, 195, 511 S.E.2d 102, 104 (1999) (citations omitted). The term "injury by accident" is defined as an "identifiable incident or sudden precipitating event [that results] in an obvious sudden mechanical or structural change in the body." Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989) (citation omitted); see Chesterfield Co. v. Dunn, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990). An "injury by accident" requires proof of "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." Dunn, 9 Va. App. at 476, 389 S.E.2d at 181.

> "It is apparent from the language employed by the drafters of the Act that it was originally intended to provide coverage for the most frequently recurring kinds of industrial accidents, e.g., injuries immediately resulting from hazards of the workplace such as blows from falling objects . . . [or] falls from ladders . . . ." Morris v. Morris, 238 Va. 578, 585, 385 S.E.2d 858, 862 (1989). The more difficult issue through the years has been "whether an injury resulting from repetitive trauma, continuing mental or physical stress, or

-

> other cumulative events, amounts to an 'injury by accident' within the meaning of [the Act] . . . ." <u>Id.</u> at 581, 385 S.E.2d at 859-60.

<u>Southern Express v. Green</u>, 257 Va. 181, 186, 509 S.E.2d 836, 839 (1999). Because carpal tunnel syndrome has been treated as a cumulative trauma injury in numerous cases, and more recently the General Assembly has provided special coverage for the condition as an "ordinary disease of life" under Code § 65.2-401, we must determine whether the condition may also be compensable as an "injury by accident" when it is causally related to a single, identifiable incident.

In the most recent Supreme Court decision addressing carpal tunnel syndrome, <u>The Stenrich Group v. Jemmott</u>, 251 Va. 186, 467 S.E.2d 795 (1996), the Court held as a matter of law that <u>repetitive motion injuries</u> such as "carpal tunnel syndrome" and "tenosynovitis" are not compensable conditions under the Act. <u>Id.</u> at 189-91, 199, 467 S.E.2d at 797-98, 802. In determining that these conditions did not constitute <u>occupational diseases</u>, the Supreme Court made it clear that "job-related impairments resulting from cumulative trauma caused by repetitive motion, however labeled or however defined, are, as a matter of law, not compensable under the present provisions of the Act." <u>Id.</u> at 199, 467 S.E.2d at 802.

In response to <u>Stenrich</u>, in 1997 the General Assembly amended Code § 65.2-400 to provide that "condition[s] of carpal

-

tunnel syndrome are not occupational diseases but are ordinary diseases of life as defined in [Code] § 65.2-401." The General Assembly also amended Code § 65.2-401 to provide that the elements required to prove a compensable ordinary disease of life must be "established by clear and convincing evidence, (not a mere probability)."[3] See also National Fruit Prod. Co. v. Staton, 28 Va. App. 650, 654, 507 S.E.2d 667, 669 (1998) (per curiam) (affirming the commission's award of benefits for carpal tunnel syndrome under 1997 amendments), aff'd, ___ Va. ___, ___ S.E.2d ___ (2000) (per curiam).

Subject to the 1997 amendments providing recovery for carpal tunnel syndrome under an "ordinary disease of life analysis," the Supreme Court has made it clear that cumulative trauma conditions are not compensable under the Act. See Stenrich, 251 Va. at 199, 467 S.E.2d at 802; see also Merillat Indus. v. Parks, 246 Va. 429, 433-34, 436 S.E.2d 600, 602 (1993) (holding that a torn rotator cuff was not a compensable "occupational disease" under the Act because the condition was not a disease, but rather was an injury caused by repetitive trauma); Morris, 238 Va. at 589, 385 S.E.2d at 865 (concluding that "injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, as well as injuries sustained at an unknown time, are not 'injuries by

---

[3] We note that the amendment deleted from the statute the words "to a reasonable medical certainty."

-

accident' within the meaning of Code § 65.1-7 [now Code § 65.2-101]"); Aistrop v. Blue Diamond Coal Co., 181 Va. 287, 293, 24 S.E.2d 546, 548 (1943) (concluding that an "injury of gradual growth, . . . caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm, is definitely excluded from compensation").  However, these cases do not preclude a finding that carpal tunnel syndrome, in an appropriate case supported by credible evidence in the record, may be the result of an "identifiable incident," bringing the injury within the purview of Code § 65.2-101.

The Supreme Court has consistently recognized that a claimant may recover compensation benefits by meeting the requirements of an "injury by accident" under Code § 65.2-101. See Green, 257 Va. at 187, 509 S.E.2d at 839 (citing Morris, 238 Va. at 589, 385 S.E.2d at 864-65; Aistrop, 181 Va. at 293, 24 S.E.2d at 548) (other citations omitted)).  While a majority of the cases have addressed carpal tunnel syndrome as either a repetitive injury or an occupational disease, none have considered whether the condition may be the result of one single act or identifiable incident.

The Act makes a distinction between an "injury by accident" and an "occupational disease."  See Code § 65.2-101 (defining "injury"); Code § 65.2-400 (defining "occupational disease"); see also Holly Farms v. Yancy, 228 Va. 337, 341, 321 S.E.2d 298,

-

300 (1984) ("A definition of either 'injury' or 'disease' that is so broad as to encompass any bodily ailment of whatever origin is too broad because it would make unnecessary and meaningless the two categories specifically set forth in the Act."). Additionally, the Supreme Court has recognized that the term "disease" does not equate with the term "injury." Stenrich, 251 Va. at 193 n.1, 467 S.E.2d at 799 n.1. The term "injury" does not include a disease in any form, as used in Code § 65.2-101, but is "language of limitation." Id. Therefore, "just because a doctor opines that a particular impairment is a disease does not necessarily make it so. . . . [W]hether a claimant suffers from a disease within the contemplation of the Act is a mixed question of law and fact, and whether a proper definition has been used to test the authenticity of a doctor's opinion is strictly a legal one." Id. at 198, 467 S.E.2d at 801.

"A disease is a condition which may arise from any number of causes, including trauma, that impairs the function of the body or any part thereof." Perdue Farms, Inc. v. McCutchan, 21 Va. App. 65, 71, 461 S.E.2d 431, 434 (1995). "The distinction between injury and disease lies in the 'obvious sudden mechanical or structural' aspect of injury." Id.; see also A. Larson, Workers' Compensation Law § 41.13 (noting that the traditional distinction between "occupational diseases" and "accidental injuries" was "both the fact that [diseases] could

-

not be said to be unexpected, since they were recognized as inherent hazard of continued exposure to conditions of the particular employment, and the fact that [diseases] were gradual rather than sudden in onset").

In light of these distinctions, we conclude that a claimant's carpal tunnel syndrome may be compensable as an "injury by accident" or an "occupational disease," depending on how it develops.  See Rocco Turkeys, Inc. v. Lemus, 21 Va. App. 503, 507, 465 S.E.2d 156, 158 (1996).

> [Carpal tunnel syndrome], which is a condition that exhibits a characteristic set of symptoms caused by compression of the median nerve in the carpal tunnel, will qualify as a disease when it develops as the body's response to environmental factors, infective agents, or inherent defects of the body.  [Carpal tunnel syndrome] may be caused by a number of precipitating factors or events, such as repetitive motion, cumulative trauma, obesity, rubella, pregnancy, rheumatoid arthritis, gout, and hypothyroidism, or a traumatic injury.

Id. (citing 2 Cecil Textbook of Medicine 1563 (19th ed. 1992)) (emphasis added).  Accordingly, we hold that carpal tunnel syndrome may qualify as an "injury by accident" under Code § 65.2-101 or as an "occupational disease" under Code § 65.2-401, depending upon its pathology or how it is incurred.[4]

---

[4] The commission has previously held that carpal tunnel syndrome may be compensable as an "injury by accident."  See Begley v. Buster Brown Apparel, Inc., No. 179-21-69 (March 7, 1997).  In Begley, the claimant "identified a sudden, specific precipitating event, and her testimony [was] uncontradicted and [was] corroborated by the medical evidence."  The commission

-

To hold otherwise would differentiate one type of injury by accident from all others, an outcome not sanctioned by the Act.

We must also determine whether the commission applied the proper burden of proof in finding that claimant's carpal tunnel syndrome was compensable under the Act. Because claimant suffered from carpal tunnel syndrome, a condition specifically provided for in Code § 65.2-401, employer argues that claimant was required to prove his claim--even if an "injury by accident"--by a "clear and convincing evidence" standard. The commission rejected employer's argument, stating:

> Code Section 65.2-400 defining the term "occupational disease" was amended to provide that, effective July 1, 1997, carpal tunnel syndrome would not [be] considered an occupational disease but is an ordinary disease of life as defined in 65.2-401. <u>This does not, as urged by the employer, mean that, by extension, all carpal tunnel cases should be subject to the higher burden of proof under Section 65.2-401 of clear and convincing evidence rather than a mere preponderance</u>.
>
> If such were the true [sic], any claimant alleging carpal tunnel syndrome as a compensable consequence of his industrial accident would be required to meet the statutory burden under that Code Section. This is inconsistent with existing case law. The intent of the General Assembly when amending Section 65.2-400 was to delineate which Code Section carpal tunnel syndrome should be considered when the claimant was

found that the claimant's injury "was not a cumulative trauma injury, but an injury by accident compensable under the [Act]. The claimant described a sudden onset of pain which occurred at a specific time and place while performing a single act."

-

> proceeding under an occupational disease theory, <u>not to require claimant's [sic] to meet a higher burden of proof in all carpal tunnel syndrome cases, regardless of the theory</u>.

(Emphasis added) (footnote omitted).

We conclude the commission applied the proper burden of proof in determining whether claimant's carpal tunnel syndrome was compensable under the Act.  While the heightened burden of proof of "clear and convincing evidence" is required for those "ordinary disease of life" claims brought under Code § 65.2-401,[5]

---

[5] Code § 65.2-401 provides:

> An ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease for purposes of this title if each of the following elements is established by <u>clear and convincing evidence, (not a mere probability)</u>:
> 1.  That the disease exists and arose out of and in the course of employment as provided in § 65.2-400 with respect to occupational diseases and did not result from causes outside of the employment, and
> 2.  That one of the following exists:
> a.  It follows as an incident of occupational disease as defined in this title; or
> b.  It is an infectious or contagious disease contracted in the course of one's employment in a hospital or sanitarium or laboratory or nursing home as defined in § 32.1-123, or while otherwise engaged in the direct delivery of health care, or in the course of employment as emergency rescue personnel and those volunteer emergency rescue personnel referred to in § 65.2-101; or

-

a claimant is required to prove an "injury by accident" under Code § 65.2-101 by only a preponderance of the evidence. See Webb, 257 Va. at 195, 511 S.E.2d at 104; Morris, 238 Va. at 584, 385 S.E.2d at 862 (citing A.N. Campbell & Co. v. Messenger, 171 Va. 374, 379, 199 S.E. 511, 514 (1938)). Thus, it is clear that "[t]he claimant had the burden of establishing, by a preponderance of the evidence, and not merely by conjecture or speculation, that [he] suffered an injury by accident which arose out of and in the course of the employment." Central State Hosp. v. Wiggers, 230 Va. 157, 159, 335 S.E.2d 257, 258-59 (1985) (citations omitted) (emphasis added). Here, the commission correctly held that claimant was required to prove the existence of an "injury by accident" under Code § 65.2-101 by a preponderance of the evidence.

### III. CAUSATION

Employer next contends the evidence fails to support the commission's finding that claimant's carpal tunnel syndrome was caused by the injury on February 4, 1998. Employer argues that claimant's only complaint at the time of injury was a "sharp pain" in his right hand and that he did not report numbness or weakness in the hand consistent with a carpal tunnel injury.

---

c.  It is characteristic of the employment and was caused by conditions peculiar to such employment.

(Emphasis added).

-

"On appeal, we view the evidence in the light most favorable to the claimant, who prevailed before the commission." Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 672, 508 S.E.2d 335, 340 (1998) (citations omitted).  "A question raised by conflicting medical opinion is a question of fact."  WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997).  "'Decisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court.'"  Id. (quoting Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991)).  "'The fact that there is contrary evidence in the record is of no consequence.'"  Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

In the instant case, the evidence established that on February 4, 1998, claimant was injured while connecting a fuel hose to an aircraft in extremely cold weather.  As he lifted the hose and adapter above his shoulders, he felt the sudden onset of pain extending from the fingers of his right hand to his right shoulder.  The disability form completed by the emergency room physician contained a diagnosis of "probable carpal tunnel syndrome."  Claimant was eventually referred to Dr. Alexander, who diagnosed him as suffering from right carpal tunnel syndrome.  Dr. Alexander ultimately opined that claimant's right carpal tunnel syndrome was directly related to the February 4,

-

1998 incident and he recommended that claimant undergo surgical correction.

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 214 (1991). In its role as fact finder, the commission was entitled to weigh the medical evidence. The commission did so and specifically found Dr. Alexander's opinion "to be more persuasive," while rejecting the contrary medical opinions. See Fingles Co. v. Tatterson, 22 Va. App. 638, 641, 472 S.E.2d 646, 647 (1996) (the opinion of a treating physician is entitled to great weight). Dr. Alexander's opinion, coupled with claimant's testimony, constitutes credible evidence to support the commission's finding that claimant proved a causal connection between his right carpal tunnel syndrome and his February 4, 1998 injury by accident.

This conclusion is supported by the Supreme Court's decision in Green, 257 Va. 181, 509 S.E.2d 836. In Green, the Supreme Court considered "whether chilblains that the claimant suffered as a result of being exposed to cold temperature in a walk-in cooler during a four-hour period consitute[d] an 'injury by accident' under [the Act]." Id. at 183, 509 S.E.2d at 837. When the claimant filed her claim for compensation benefits, she alleged an "injury by accident" under Code § 65.2-101. Outlining the appropriate test, the Supreme Court wrote:

-

> [T]o establish an "injury by accident," a
> claimant must prove (1) that the injury
> appeared suddenly at a particular time and
> place and upon a particular occasion, (2)
> that it was caused by an identifiable
> incident or sudden precipitating event, and
> (3) that it resulted in an obvious
> mechanical or structural change in the human
> body.

Id. at 187, 509 S.E.2d at 839 (citations omitted).

In Green, the Supreme Court concluded that the claimant's chilblains were not an "'injury of gradual growth . . . caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm . . . .'" Id. at 189, 509 S.E.2d at 841 (citations omitted). Rather, the evidence established that

> the chilblains were "the result of some
> particular piece of work done or condition
> encountered on a definite occasion . . . ."
> [Aistrop, 181 Va. at 239, 24 S.E.2d at 548].
> In other words, Green's chilblains resulted
> from a single exposure to cold temperature
> on a definite occasion during the
> performance of a specific piece of work,
> i.e., an "identifiable incident." Morris,
> 238 Va. at 589, 385 S.E.2d at 865. It was
> not caused by repeated exposures over a
> period of months or years.

Id.

Similar to the situation in Green, the evidence in the instant case proved that claimant's carpal tunnel syndrome was not an injury of gradual growth or the result of cumulative trauma. Indeed, the commission specifically found that

-

claimant's injuries occurred while performing a single act, stating the following:

> The record establishes, and we so find, that the "identifiable incident" in this case commenced when the claimant felt a sudden onset of pain in the right arm while lifting the fuel hose and adapter above shoulder level. He then lost strength shortly thereafter in his right arm. At some juncture during this incident the claimant also suffered a puncture wound to the dorsum of his right hand. As in a motor vehicle accident that can cause more than one structural or mechanical change in the body so too did this incident cause greater than one bodily change. The event causing these two insults to the body must be viewed as a unitary whole rather than two disparate occurrences. Regardless of the sequence, the injuries occurred while claimant was performing a single act.

(First emphasis added). Here, credible evidence supports the commission's finding that claimant proved (1) that his carpal tunnel syndrome appeared suddenly at a particular time and place and upon a particular occasion, (2) that it was caused by an identifiable incident or sudden precipitating event, and (3) that it resulted in an obvious sudden mechanical or structural change in the human body. See id. at 187, 509 S.E.2d at 839. Accordingly, we affirm the commission's finding that claimant's carpal tunnel syndrome constituted an "injury by accident" within the meaning of Code § 65.2-101.

Affirmed.

-