As the main opinion notes, the trial court treated the employee's right-wrist carpal tunnel syndrome as a workplace injury arising from an accident; that court's judgment states as a finding of fact that the worker's "claim of a permanent disabling compensable injury to her right wrist is supported bysubstantial evidence" (emphasis added). The main opinion concludes that because carpal tunnel syndrome may be caused either by repetitive hand movements or by a single acute event, the trial court did not, as a matter of law, err in applying the general "preponderance-of-the-evidence" standard of proof set forth in Ala. Code 1975, § 25-5-81(c), rather than the specific "clear-and-convincing-proof" standard applicable to "injuries which have resulted from gradual deterioration or cumulative physical stress disorders." Based upon my review of the Legislature's 1992 amendments to our workers'-compensation law in Act No. 92-537, 1992 Ala. Acts, as well as cases decided before and after those amendments became effective, I believe that the trial court applied the wrong standard of proof.
"Carpal tunnel syndrome" does not appear in any reported Alabama appellate opinion issued before 1986; however, between that year and the effective date of Act No. 92-537, this court decided several cases involving claims in which workers sought workers' compensation benefits based upon claims that their work had caused them to suffer from carpal-tunnel syndrome. In the first of these cases, we implicitly held that that condition could be a compensable accidental "injury" arising out of and in the course of employment. See Gold Kist, Inc. v. Casey,495 So.2d 1129 (Ala.Civ.App. 1986). However, this court also affirmed, in pertinent part, a judgment determining that a worker who suffered from tenosynovitis, a condition similar to carpal tunnel syndrome, had demonstrated that she had sustained an "occupational disease" as a result of repetitive hand movements in her work on a conveyor belt. W.Y. Shugart Son, Inc. v.Cox, 578 So.2d 1332 (Ala.Civ.App. 1990). Although we affirmed several judgments denying compensation where trial courts had concluded that the claimants had not proven that their carpal tunnel syndrome had arisen out of and in the course of their *Page 435 
employment,[1] we also reversed a judgment denying benefits where an employee complained of symptoms of developed carpal tunnel syndrome only two days after beginning work for her employer.[2]
In the preamble to Act No. 92-537, the Legislature made a number of findings and stated a number of conclusions pertaining to workers' compensation claims based upon carpal tunnel syndrome:
 "It is . . . the intent of the Legislature . . . to address difficulties in the current scheme that are producing a debilitating and adverse effect on the state's ability to retain existing industry and attract new industry. The Legislature finds that the current Workmen's Compensation Law of Alabama and other means of compensation or remedy for injury in the workplace ha[ve] unduly increased cost to employers in the state, driven away jobs, and produced no concomitant benefit. There is a total absence of any reliable evidence that the current act has resulted in fewer injuries on the job, and a considerable body of evidence that any added benefit to the worker is significantly offset by the resulting reduction in job opportunities.
 "The Legislature has reviewed substantial evidence related to various types of cumulative physical stress disorders, cumulative trauma disorders and certain `natural aging' disorders, including carpal tunnel syndrome, repetitive motion syndrome, and even back and neck infirmities that result from gradual deterioration or the natural process of aging. The Legislature has concluded that it is extremely difficult for the adjudicator of fact to determine whether these disorders are related to work or whether they result from some congenital defect, aging processes, or simply the routine activities of daily living.
 "These claims also account for a substantial percentage of the workers' compensation claims in this state and are one of the contributing causes of the current workers' compensation crisis facing this state."
Act No. 92-537, among other things, amended the term "injury" appearing in § 25-5-1(9), Ala. Code 1975, so as to include "physical injury caused either by carpal tunnel syndrome disorder or by other cumulative trauma disorder if either disorder arises out of and in the course of the employment" Act No. 92-537, § 2 (emphasis added). The Legislature simultaneously amended § 25-5-81, Ala. Code 1975, to include a provision that the standard of proof in workers' compensation cases would be proof by the preponderance of the evidence "except in cases involving injuries which have resulted from gradual deterioration orcumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment." Act No. 92-537, § 26 (emphasis added), now codified as Ala. Code 1975, § 25-5-81(c).
The Workers' Compensation Act, as amended by Act No. 92-537 and viewed in light of the preamble to that Act, leaves no doubt that the Legislature specifically intended to classify carpal-tunnel syndrome allegedly arising out of and in the course of employment as a cumulative-physical-stress injury subject to the higher "clear-and-convincing" *Page 436 
standard of proof of causation. Simply put, under the Workers' Compensation Act, "[c]arpal tunnel syndrome is a `cumulative stress disorder,' and a worker seeking benefits based on that disorder must present clear and convincing evidence indicating that her carpal tunnel syndrome `arose out of and in the course of [her] employment.'" Thompson v. Akzo Nobel Ind. Fibers,Inc., 796 So.2d 375, 376 (Ala.Civ.App. 2001). Although it is possible that carpal tunnel syndrome, as a medical matter, may well arise in some cases from a sudden trauma rather than a gradual deterioration process, the legal classification of carpal tunnel syndrome with respect to a claimant's entitlement to benefits under the Workers' Compensation Act is a legislative policy determination that the courts of this state should not disregard.
Citing Ogden Aviation Servs. v. Saghy, 32 Va.App. 89,526 S.E.2d 756 (2000), the main opinion posits that to treat carpal-tunnel syndrome as noncompensable in the absence of clear and convincing proof of a causal relationship to an accident would be to improperly classify one type of accidental injury as different from other such injuries. Ogden Aviation addressed the effect of certain amendments to Virginia's workers' compensation laws that classify "ordinary diseases of life," such as carpal tunnel syndrome, as potentially compensable "occupational diseases." In that case, the Virginia Court of Appeals noted that before the legislature of that state had permitted "ordinary diseases of life" to be deemed compensable upon proof by clear and convincing evidence, the Virginia Supreme Court had held that repetitive-motion injuries such as carpal tunnel syndrome were not compensable under that state's workers' compensation laws. 32 Va.App. at 95-96,526 S.E.2d at 759 (citing The Stenrich Group v. Jemmott, 251 Va. 186,467 S.E.2d 795 (1996)). However, the Ogden Aviation court nevertheless affirmed an award of workers' compensation benefits to an employee who testified to having suffered carpal tunnel syndrome symptoms after sustaining a puncture wound in the course of his employment, concluding that Stenrich Group and related cases did not preclude a claim that carpal tunnel syndrome had instead resulted from an "identifiable incident" and that such a claim would be subject to a preponderance-of-the evidence standard of proof. Ogden Aviation, 32 Va.App. at 96-100,526 S.E.2d at 759-61.
However, in this case, this court is called upon to interpret workers' compensation laws enacted by the Legislature of Alabama, not of Virginia. As noted above, before the 1992 amendments to our Workers' Compensation Act, an employee's allegedly work-related carpal tunnel syndrome was held generally to be compensable in Alabama (although it was unclear at that time whether carpal tunnel syndrome should be classified as an occupational disease or as an accidental injury). Both the preamble and text of Act No. 92-537 reveal that the Legislature intended that workers' compensation benefits based upon claims of cumulative physical-stress disorders should not be awarded in the future except upon clear and convincing evidence (not merely substantial evidence) of a causal connection between the employment and the disorder. The Legislature further indicated in Act No. 92-537 that it considered "carpal tunnel syndrome" in particular to be a product of cumulative stress.
While treating one or more types of injury in a different manner than others may not normally be appropriate, it is the Legislature of this state, for good or ill, that has singled out carpal tunnel syndrome as a "natural aging" disorder that prompts "a substantial percentage of the workers' compensation claims in this state" and as being "one of the contributing *Page 437 
causes" of a "workers' compensation crisis." The Legislature has therefore decided that carpal-tunnel syndrome should only result in employer liability under the Workers' Compensation Act in the rare case where causation of that condition by a worker's employment can be proved by clear and convincing evidence. It is the role of the courts of this state to give effect to that legislative intent.
Instead of applying the "clear-and-convincing" standard to the employee's claim involving an alleged workplace injury to her right wrist (i.e., the wrist upon which Dr. Autry performed carpal-tunnel release surgery), the trial court stated that her claim of a compensable injury to that wrist was "supported by substantial evidence." Because the trial court patently did not apply the "clear-and-convincing-evidence" standard, I believe that the judgment should be reversed and the cause remanded for the trial court to apply the correct standard. See TallasseeSuper Foods v. Hepburn, 771 So.2d 477 (Ala.Civ.App. 2000). I therefore respectfully dissent from the affirmance.
THOMPSON, J., concurs.
[1] Padgett v. Neptune Water Meter Co., 510 So.2d 277
(Ala.Civ.App. 1987); Alverson v. Fontaine Fifth Wheel Co.,586 So.2d 216 (Ala.Civ.App. 1991); and Clanton v. Hudson Foods,Inc., 594 So.2d 141 (Ala.Civ.App. 1991).
[2] Malone v. ConAgra Poultry, Inc., 595 So.2d 897
(Ala.Civ.App. 1992).