COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Chafin and Decker
Argued at Richmond, Virginia

UNPUBLISHED

DAVIS & GREEN, INC. AND
  VIRGINIA CONTRACTORS GROUP
  SELF-INSURANCE ASSOCIATION

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1415-13-1                       JUDGE TERESA M. CHAFIN
                                                    FEBRUARY 25, 2014

WARREN LOWERY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Steven H. Theisen (Midkiff, Muncie & Ross, P.C., on briefs), for
            appellants.

            Brody H. Reid (Reid Goodwin, PLC, on brief), for appellee.


       Davis & Green, Inc. and the Virginia Contractors Group Self-Insurance Association

(referred to collectively as "the employer") appeal a decision of the Workers' Compensation

Commission ("commission") awarding Warren Lowery ("Lowery") medical benefits and

temporary total disability benefits. First, the employer contends that the commission erred in

finding that Lowery sustained an injury by accident arising out of and in the course of his

employment. Next, the employer contends that the commission erred in finding that Lowery's

medical treatment and disability were related to the alleged accident. Finally, the employer

argues that the commission erred in finding Lowery was entitled to compensation benefits and

was disabled as alleged. For the reasons that follow, we affirm the decision of the commission.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (*en banc*). So viewed, the evidence proved that on August 4, 2011, Lowery was working as an electrician supervisor for the employer. On this date, Lowery was working at the Coffeewood Correctional Center, a prison facility in Culpeper, Virginia, replacing all of the fluorescent lighting ballasts with newer, more economical ones. Because of security procedures at the facility, all items used had to be removed at the end of each workday. To remove the ballasts from the facility, they were stacked onto a cart and then transferred onto a utility trailer. Once the trailer was outside, the ballasts were placed in milk crates – 30 to 40 per crate – and then loaded onto a recycling trailer. Lowery estimated that the loaded crates weighed between 60 and 80 pounds each.

Near the end of the workday on August 4, Lowery had moved two crates of ballasts when he reached over the side of the utility trailer to lift another crate. Lowery picked up the crate and turned, at which point he "felt a pop" in his lower back. Initially, he experienced a sensation of pressure. He put the crate down and stood still for a moment. After completing his work, Lowery drove home – a 1½ to 2 hour drive. The feeling of pressure continued, but Lowery was not feeling much pain until he arrived home and stood up outside of his truck to walk inside. At that point, the pain increased, particularly as he went inside and removed his boots.

On August 6, 2011, Lowery saw his primary care physician, Dr. Russell Myers. Lowery was treated by Dr. Myers and others previously for back pain. This treatment included two previous MRI tests in 2004 and 2006, but never had resulted in surgery. The 2004 MRI was due to his significant back pain and was performed while he was seeing Dr. Myers. Dr. Myers' April

30, 2004 and May 11, 2004 office notes reflect that Lowery was having pain in his right hip, leg, calf, and foot. The 2004 MRI revealed a prominent disc herniation/disc extrusion at L4-5 centrally and on the right, with compression and posterior displacement of the right L5 nerve root. He also had a central protrusion of the L5-S1 disc.

Lowery also saw Dr. David S. Geckle in 2004, complaining of low back and right leg pain. Lowery completed a patient questionnaire at the time of his August 5, 2004 office visit with Dr. Geckle. He listed the reason for his visit or chief complaint as a "problem with disc in back" and indicated he was experiencing back and leg pain. Dr. Geckle recorded that Lowery had low back pain radiating to his hip, as well as from his right knee to ankle. Lowery reported that he had been able to modify his activities in order to reduce pain. Symptoms returned, however, when he tried to increase his activity. Dr. Geckle reviewed the MRI scan from 2004, noting that it showed a right-sided disc herniation at L4-5, impacting the L5 nerve root. It also showed a central disc bulge at L5-S1. He diagnosed an L4-5 herniated disc. Dr. Geckle recommended increasing activity; a course of physical therapy; glucosamine and chondroitin; and, if the symptoms returned, an epidural injection.

Lowery returned to Dr. Geckle's office on September 20, 2004, following the course of physical therapy. While he reported some improvement, he still reported back pain, especially with certain positions. Dr. Geckle stressed the importance of avoiding activities that seemed to worsen his problem.

In 2006, Lowery's back problems again required treatment. He saw Dr. Myers on July 3, 2006, reporting pain in his right back and leg. Lowery then saw Dr. Peyman Nazmi on July 10, 2006, complaining of pain shooting from his back into his right thigh and lower leg, and further complaining of right leg numbness. Lowery reported to Dr. Nazmi that the pain was deep, constant, burning, and sharp, significantly interfering with his activities of daily living. The pain

- 3 -

worsened with walking, standing, bending, and sitting. Dr. Nazmi conducted a positive straight leg raise test and reported positive findings on the right side. Dr. Nazmi's assessments were lumbar HNP and lumbar radiculopathy. He discussed the options of medical management and invasive therapy. Dr. Nazmi performed an epidural injection at L4-5 and L5-S1 and suggested a repeat MRI to rule out any new pathology given the severity of his pain. Lowery underwent the second MRI on July 13, 2006. The herniation at L4-5 was slightly more prominent, with more stenosis at that level, as well as mild foraminal stenosis. The L5-S1 protrusion remained unchanged.

Lowery returned to Dr. Geckle again in 2006, still complaining of right leg pain going to his calf. Lowery told Dr. Geckle that the most recent episode of pain began in June 2006 and was described as severe for about a month. By the time of his September 27, 2006 visit to Dr. Geckle, Lowery's problem had almost resolved. He still had burning in his calf when he stepped hard, however, and limped when he tried to run. His right leg felt weaker. Dr. Geckle reviewed the July 13, 2006 MRI scan, noting a central to right-sided disc herniation at L4-5, slightly progressed from the earlier study. He observed moderate canal stenosis at L5-S1, although less significant than at L4-5.

Lowery complained to Dr. Myers of low back pain once more in 2008, when another MRI was ordered but never performed. Lowery again complained to Dr. Myers about low back pain on August 20, 2010, with pain radiating to his right leg. Lowery returned to Dr. Myers on October 26, 2010, still complaining of pain in his low back and hip. Dr. Myers assessed a lumbar disc problem with stenosis and referred Lowery to Tuckahoe Orthopaedic Associates.

When Lowery was seen at Tuckahoe Orthopedic Associates, he completed a patient history form, on which he wrote that he had suffered a stinging and aching pain for more than five years — 50% in his back and 50% in his leg. He reported that he could not stand more than

one minute without notable symptoms. Johnathon D. Chisum, a physician's assistant, examined Lowery on November 18, 2010. Chisum ordered a Medrol Dosepak and encouraged over-the-counter ibuprofen, along with exercises. If Lowery had no response in the following weeks, he was to be scheduled for an MRI and follow-up appointment with Dr. J. Michael Simpson, an orthopedic surgeon, for interpretation and re-evaluation.

Between November 2010 and August 2011, Lowery continued to suffer from back problems. Those problems, including aching and soreness, continued up through July 2011, just before the alleged accident. Lowery sought a recommendation from Dr. Myers for a back specialist on July 27, 2011.

After the August 4, 2011 incident at issue on appeal, Dr. Myers prescribed anti-inflammatory medication and again referred Lowery to Dr. Simpson at Tuckahoe Orthopedics on August 6, 2011. On August 17, 2011, Lowery was again treated by Chisum at Tuchahoe Orthopedics. Chisum ordered an MRI and a follow-up appointment with Dr. Simpson for interpretation and re-evaluation. On August 23, 2011, Lowery underwent an MRI and Dr. Simpson discussed with Lowery surgical options. Dr. Simpson recommended a right-sided hemilaminectomy at L5, a partial laminectomy at L4 and S1, and decompression of the right side at L5-S1 nerve roots. Lowery was also offered an alternative injection option.

On September 22, 2011, Dr. Simpson performed Lowery's back surgery. Lowery was given a full-duty release to return to his pre-injury work on November 8, 2011. On February 13, 2012, Dr. Simpson responded to a questionnaire from Lowery's counsel, opining that the back surgery and back condition for which that procedure was performed were "directly related" to the alleged work injury. Simpson further opined that Lowery was totally disabled from August 17, 2011 to November 8, 2011.

On March 2, 2012, Dr. Felix M. Kirven performed a medical records review. He reviewed the medical records that pre-dated the August 4, 2011 alleged work injury. He opined that the "MRI scans from 2004 and 2006 are unchanged from the MRI scan of 8/23/2011." It was his opinion, to a reasonable degree of medical certainty, that Lowery sustained no structural changes in his spine since the 2006 MRI and that the alleged work injury of August 4, 2011 did not change Lowery's previous mechanical problems. He found that the lumbar surgery was related to the pre-existing condition and not any acute condition.

On March 14, 2012, Dr. Simpson was deposed. Although Simpson admitted that he had not reviewed the 2004 or 2006 MRI films or reports, he did not think that any MRI film prior to the alleged injury would have any bearing whatsoever on his opinion as to causation. He testified that the 2004 and 2006 MRI films would be "ancient history" and that any herniation present in 2004 or 2006 may have resolved before 2011. Dr. Simpson did not know how frequently Lowery had suffered from low back pain in the years since 2006. He only knew about the two occasions on which Lowery presented at his office. He had not seen any of Dr. Myers' office notes.

As to the alleged incident, Dr. Simpson never personally asked Lowery what happened. The only history he had was that given to the physician's assistant. He had no idea how heavy the object was or the maneuver involved. However, it was his opinion that the object did not need to be heavy, stating that a lot of people do not remember doing anything at the time a disc is herniated. Dr. Simpson further indicated that bending or twisting can cause a herniation as well as "picking up a feather or a newspaper."

As to the period of disability, Dr. Simpson had no statements in his chart evidencing disability other than the August 24, 2011 restriction, the November 14, 2011 full-duty release, and the subsequent questionnaire response. Dr. Simpson then went on to state that Lowery

would have been cleared to work at the November 8, 2011 appointment, which was six weeks after surgery.

## II. ANALYSIS

### A. Injury by Accident

On appeal, the employer contends Lowery did not prove an "injury by accident." More specifically, the employer argues that the evidence did not show that there was a "sudden and obvious" injury and that Lowery's condition stemmed from a "cumulative trauma" rather than a sudden injury by accident. See Kraft Dairy Grp., Inc. v. Bernardini, 229 Va. 253, 256, 329 S.E.2d 46, 48 (1985) ("Under the well-settled law in Virginia, an injury resulting from the cumulative trauma caused by the physical exertions inherent in an employee's normal work is not an 'injury by accident,' compensable under the Workers' Compensation Act."). Alternatively, the employer argues that if the accident happened, it did not cause a mechanical or structural change, given Lowery's long-term back problems.

At the outset, we acknowledge the long-standing principle that the Workers' Compensation Act is remedial in nature and should be liberally construed in favor of the worker. E.I. du Pont de Nemours & Co. v. Eggleston, 264 Va. 13, 17, 563 S.E.2d 685, 687 (2002). To obtain compensation for his injuries, a claimant must prove by a preponderance of the evidence that he suffered an injury by accident "arising out of and in the course of the employment." Code § 65.2-101. On appeal, whether an employee has suffered an "injury by accident" is a mixed question of law and fact. R&R Constr. Corp. v. Hill, 25 Va. App. 376, 378-79, 488 S.E.2d 663, 664 (1997). This Court upholds the commission's findings of fact on appeal if credible evidence supports them. James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989). However, whether those facts prove that a claimant suffered an "injury by accident" is a question of law. Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 168,

- 7 -

543 S.E.2d 619, 621 (2001) (citing <u>Tomko v. Michael's Plastering Co.</u>, 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970)). The commission's findings on legal questions are not conclusive and binding upon the Court, but are properly subject to judicial review. <u>Id.</u> (citing <u>Hill</u>, 25 Va. App. at 378-79, 488 S.E.2d at 664).

"One seeking compensation retains the burden of proving by a preponderance of the evidence that he sustained a compensable injury." <u>Williams v. Auto Brokers</u>, 6 Va. App. 570, 571-72, 370 S.E.2d 321, 322 (1988) (citing <u>Hercules, Inc. v. Stump</u>, 2 Va. App. 77, 79, 341 S.E.2d 394, 395 (1986)). "'Injury' means only injury by accident arising out of and in the course of employment." Code § 65.2-101. "An 'injury by accident' requires proof of '(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change.'" <u>Ogden Aviation Servs. v. Saghy</u>, 32 Va. App. 89, 94, 526 S.E.2d 756, 758 (2000) (quoting <u>Chesterfield County v. Dunn</u>, 9 Va. App. 475, 476, 389 S.E.2d 180, 181 (1990)).

The commission found as established fact that Lowery suffered a compensable injury by accident on August 4, 2011 when he lifted a crate of ballasts and felt a pop in his back. The commission further found, and we agree, that although Lowery may have had pre-existing disc herniations with episodic pain to the right side, the condition was materially aggravated as a result of the injury he sustained on August 4, 2011.[1] Such an injury is compensable. "A finding

---

[1] The accident descriptions in the August 25, 2011 employer's accident report, Lowery's September 1, 2011 recorded statement, and an August 17, 2011 medical record were consistent with Lowery's description at the hearing before the deputy commissioner. The earlier August 6, 2011 medical record from Lowery's family physician, Dr. Myers, does not specifically reference Lowery's accident as it reflects that Lowery "was suffering from an exacerbation that occurred during heavy lifting." However, that record is not necessarily inconsistent with the remaining evidence in light of Lowery's previous treatment for his pre-existing back condition at Dr. Myers' office, and the fact that Lowery was performing heavy lifting on August 4, 2011.

that a pre-existing condition was 'accelerated or aggravated' by an injury sustained in an industrial accident establishes a causal connection between the injury and disability and the 'disability resulting therefrom is compensable under the Workers' Compensation Act." Southern Iron Works v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993) (quoting Olsten of Richmond v. Leftwich, 230 Va. 317, 320, 336 S.E.2d 893, 895 (1985)).

The evidence that Lowery felt a pop in his lower back and had an immediate and lasting sensation of pressure along with the opinion of Lowery's treating orthopedic surgeon supports the commission's finding that Lowery suffered an injury by accident arising out of and in the course of employment. Accordingly, this finding will not be disturbed on appeal.

B. Causal Relation of Medical Treatment and Disability to Work-Related Accident

Based on the expert medical testimony of Lowery's treating orthopedic surgeon, Dr. Simpson, the commission found that the August 4, 2011 accident exacerbated Lowery's pre-existing disc disease. The commission further found that the accident was the cause of Lowery's disability from August 17, 2011 through November 8, 2011 and his medical treatment, including the surgery, was causally related to the August 4, 2011 accident. On appeal, the employer contends that the commission erroneously relied on the opinion of Dr. Simpson over that of Dr. Kirven, despite Dr. Simpson's failure to consider Lowery's complete history of pre-existing back conditions, symptoms, and treatment.

On review, it is well settled that "'a finding of fact made by the commission is conclusive and binding upon this [C]ourt.'" Sneed v. Morengo, Inc., 19 Va. App. 199, 204-05, 450 S.E.2d 167, 170 (1994) (quoting Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986)). "That contrary evidence may be in the record is of no consequence if there is credible evidence to support the commission's findings." Id. at 205, 450 S.E.2d at 170-71 (internal quotation marks and citation omitted). "A question [of causation] raised by conflicting medical

opinion is a question of fact." Id. at 205, 450 S.E.2d at 171 (quoting Powell, 2 Va. App. at 714, 347 S.E.2d at 533).

The employer correctly points out that in Sneed we held that "whenever a physician's diagnosis flows from an assumption that rests upon a faulty premise, such as misinformation provided by a claimant, the commission may refuse, and often will be required to refuse, to attribute any weight to that opinion." Sneed, 19 Va. App. at 205, 450 S.E.2d at 171 (citing Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252, 329 S.E.2d 15, 16 (1985)); see also Howell Metal Co. v. Adams, 35 Va. App. 184, 187, 543 S.E.2d 629, 631 (2001). The employer concludes that, in this case, the commission was required to refuse to attribute any weight to Dr. Simpson's causation opinion because he did not have Lowery's full medical history regarding his pre-existing lumbar disease – specifically, MRI films from 2004 and 2006. The employer argues its expert, Dr. Kirven, did have this knowledge and, therefore, provided the "only credible [opinion]" concerning the question of causation in this case.

In Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 598 S.E.2d 750 (2004), we rejected a similar claim. There, the employer argued that the testimony of the claimant's treating physicians "was incredible, as a matter of law, because these doctors did not have claimant's full medical history . . . ." Id. at 409, 598 S.E.2d at 751. We disagreed, explaining that Sneed, Howell Metal, and Clinchfield Coal "do[] not stand for the proposition that doctors must have the entire medical history of an individual before they can state a valid opinion about the cause of a condition." Id. at 410, 598 S.E.2d at 752. Rather, our precedent requires only "that the commission ignore an earlier, 'mere opinion' by an expert who revises and rejects that earlier opinion in favor of a new opinion which is based on a more complete review of the facts in the case." Id.

"A finding that a pre-existing condition was 'accelerated or aggravated' by an injury sustained in an industrial accident establishes a causal connection between the injury and disability and the 'disability resulting therefrom is compensable under the Workers' Compensation Act." Southern Iron Works, 16 Va. App. at 134, 428 S.E.2d at 34 (quoting Olsten of Richmond, 230 Va. at 320, 336 S.E.2d at 895).

While it is unquestioned that Lowery had pre-existing disc herniations with episodic pain to the right side, in his deposition, Dr. Simpson explained why Lowery's treatment and the need for surgery related to the August 4, 2011 accident. Lowery informed his doctors of his previous back problems. From the physician's assistant's 2010 notes, Dr. Simpson understood Lowery previously had pain into his right hip which was treated conservatively. Following the lifting of a heavy object in August 2011, he understood that Lowery had an immediate onset of pressure in the lower back. Following that incident, Lowery's clinical examination demonstrated critical compression on the L5 nerve, with pain radiating all the way down the right leg, a positive contralateral left leg raise indicating increased tension in the right L5 nerve, and weakness of the right leg. Lowery's MRI in 2011 revealed a very large disc herniation. Dr. Simpson explained that the 2004 and 2006 MRI exams may have shown disc herniations, but this was not crucial, as Lowery had continued to be able to work until after the August 2011 accident. Dr. Simpson based his opinion upon the 2011 MRI, a clinical examination of Lowery revealing the intensity and distribution of his pain, and primarily upon his clinical judgment.

As in Amelia Sand, Dr. Simpson did not revise his opinion, but consistently related Lowery's condition to his compensable injury. Dr. Simpson was Lowery's treating orthopedic surgeon and had knowledge of Lowery's pre-existing disc herniations with episodic pain to the right side when he rendered his medical opinion and diagnosis. Dr. Simpson explained the lack of relevance of the 2004 and 2006 MRI results. His expert opinion established a causal

connection between the August 4, 2011 accident and the follow-up medical treatment and surgery.  Thus, we hold that there was credible evidence to support the commission's decision that Lowery's back injury was causally related to the accident that occurred on August 4, 2011.

### C.  Disability Benefits

Lastly, the employer contends that the commission erred in finding that Lowery was disabled for the period from August 17, 2011 through November 8, 2011.  Because we conclude the commission did not err in finding that the herniated discs and resulting medical treatment were compensable consequences of the August 4, 2011 work accident, we need not address the employer's argument that the commission erred in finding Lowery was entitled to compensation benefits and was disabled as alleged.

<u>Affirmed.</u>